# STATE OF CONNECTICUT *v.* DAVID SHERIFF
## (SC 18293)

Norcott, Palmer, Zarella, McLachlan, Eveleigh and Vertefeuille, Js.

Argued March 24—officially released July 19, 2011

*William J. Sweeney, Jr.*, for the plaintiff in error.

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, was *Scott J. Murphy*, state's attorney, for the defendant in error.

*Opinion*

ZARELLA, J. The plaintiff in error, Flavio Bail Bonds, LLC (Flavio), claims that the trial court improperly denied its petition for compromise or release from its obligation on surety bail bonds, which the trial court had ordered forfeited after the principal on the bonds, David Sheriff, the criminal defendant, failed to appear for trial. The defendant in error, Kevin T. Kane, the chief state's attorney, responds that the trial court properly denied Flavio's petition for failure to demonstrate good

cause for release from its obligation on the bonds, as required by Practice Book § 38-23. We conclude that the trial court properly denied the petition and dismiss the writ of error.

The record reveals the following relevant facts. On September 21, 2006, Sheriff was arrested for various drug crimes, and the state's attorney for the judicial district of New Britain subsequently filed informations charging Sheriff with several offenses.[1] The court set the amount of Sheriff's bonds at a total of $125,000 for all charges. Flavio executed a bail bond for Sheriff on each of the cases, and Sheriff subsequently was released from custody. At the time Flavio executed the bonds, Flavio's agents were aware that Sheriff was a Jamaican national and considered Sheriff's risk of flight when making the decision to execute the bonds and when setting the amount of its fees. At no point did the chief state's attorney make any promise to Flavio that he would seek extradition of Sheriff in the event that Sheriff fled to another country.

Sheriff failed to appear for the trial of the three cases, which had been scheduled for February 13, 2008, and the court ordered the total amount of the bonds forfeited. Pursuant to General Statutes § 54-65a (a), the court ordered a six month stay of execution of the

---

[1] In Docket No. HHB-CR-06-0230311-T, Sheriff was charged with possession of one kilogram or more of a cannabis-type substance with intent to sell by a person who is not drug-dependent, in violation of General Statutes § 21a-278 (b), conspiracy to distribute one kilogram or more of a cannabis-type substance by a person who is not drug-dependent, in violation of § 21a-278 (b) and General Statutes § 53a-48, and possession of a controlled substance within 1500 feet of a school, in violation of General Statutes § 21a-278a. In Docket No. HHB-CR-06-0231121-T, Sheriff was charged with possession of one kilogram or more of a cannabis-type substance with intent to sell by a person who is not drug-dependent, in violation of § 21a-278 (b). In Docket No. HHB-CR-06-0231122-T, Sheriff was charged with criminal attempt to possess one kilogram or more of a cannabis-type substance with intent to sell by a person who is not drug-dependent, in violation of § 21a-278 (b) and General Statutes § 53a-49.

forfeiture. Upon being notified of Sheriff's failure to appear, Flavio initiated an investigation that revealed that, two days prior to trial, Sheriff fled to Jamaica and remained there. Flavio located a likely address for Sheriff in Jamaica and forwarded the information obtained from its investigation to the chief state's attorney to assist in apprehending Sheriff. The chief state's attorney, however, declined to initiate extradition proceedings, claiming that Jamaica rarely extradites its own nationals to face drug charges in other jurisdictions.

On July 28, 2008, Flavio filed a petition with the trial court for compromise or to release Flavio from its obligation on the bonds pursuant to Practice Book § 38-23, which permits a court to relieve a surety of "any obligation" on a bond only after a showing of "good cause . . . ." Flavio contended that its efforts to locate Sheriff after his failure to appear and the chief state's attorney's subsequent decision not to seek extradition of Sheriff established good cause for either relieving Flavio of its obligation on the bonds or for the court to compromise the amount owed on the bonds. Additionally, Flavio argued that it could establish good cause on the basis of a conflict of interest inasmuch as the chief state's attorney had the authority either to refuse to extradite Sheriff and to collect on the bonds, or to relieve Flavio of its obligations by extraditing Sheriff for trial. In its memorandum of decision, the trial court first concluded that it had no authority to compromise as to the amount to be forfeited but only could relieve Flavio of its entire obligation on a showing of good cause. The court, applying the common-law rule for release of sureties, as set forth in *Taylor* v. *Taintor*, 83 U.S. (16 Wall.) 366, 369–70 (1872), and *Taintor* v. *Taylor*, 36 Conn. 242, 252 (1869),[2] determined that Flavio had

---

[2] For ease of reference, we hereinafter refer to this rule as the *Taylor* rule or the rule in *Taylor*.

failed to establish good cause and therefore denied Flavio's petition. Flavio thereafter filed a writ of error.

Flavio claims that the trial court improperly denied its petition because the court applied an incorrect legal standard for determining whether Flavio had established good cause. Flavio further argues that, under the proper legal standard, its efforts to locate Sheriff in Jamaica, coupled with the fact that the chief state's attorney, who is the only authority that may seek extradition of Sheriff; General Statutes § 51-277 (d) (1); had declined to pursue Sheriff, are sufficient to support a showing of good cause. Additionally, in support of its claim that it has established good cause, Flavio renews its argument that the chief state's attorney's decision not to extradite resulted from an impermissible conflict of interest. Finally, Flavio claims that the trial court incorrectly determined that it did not have the authority under Practice Book § 38-23 to compromise the amount of the bonds. The chief state's attorney responds that the trial court applied the correct legal standard and properly denied Flavio's petition. The chief state's attorney further responds that Flavio's claim regarding the existence of an impermissible conflict of interest is without merit. We conclude that the trial court applied the correct legal standard and properly concluded that Flavio did not establish good cause for release of its obligation.[3]

We turn first to the issue of whether the trial court applied the correct legal standard. The trial court applied the standard set forth in *Taylor* v. *Taintor*, supra, 83 U.S. 366, which affirmed a decision of the Connecticut Supreme Court of Errors, explaining that

[3] Because we conclude that the trial court properly concluded that Flavio had not shown good cause to be relieved of its obligation under the bonds, we do not address Flavio's claim that the trial court could have compromised the amount of the bonds upon a showing of good cause pursuant to Practice Book § 38-23.

a surety will be relieved of its obligation on a bail bond only when "the performance of the condition [of the bond] is rendered impossible by the act of God, the act of the obligee, or the act of the law." Id., 369. Flavio contends that this standard is antiquated and unduly restrictive, and asks this court to adopt a standard consistent with "emerging jurisprudence" by instead requiring a "multifaceted examination of the circumstances rather than holding tightly to any absolute rule."[4] The chief state's attorney responds that *Taylor* is the proper common-law rule to be applied in this state, Practice Book § 38-23 did not disturb this rule, and Flavio has not established a sufficient reason to require this court to overturn the rule in *Taylor*. We agree with the chief state's attorney that the rule in *Taylor* continues to be the proper legal standard for determining whether a surety may be relieved of its obligation on a bail bond.

The interpretation of a rule of practice is a question of law, subject to plenary review; *Maltas* v. *Maltas*, 298 Conn. 354, 360, 2 A.3d 902 (2010); and such an interpretation begins with the text of the provision at issue. See id. Practice Book § 38-23 sets forth the procedure for determining whether a surety may be relieved of its obligations on a bail bond and it requires the surety to show good cause for release. That section provides: "Where bail has been posted by a bondsman or other surety, such bondsman or surety shall not be relieved of any obligation upon the bond except with the permission of the judicial authority and for good cause shown." Practice Book § 38-23.

Although Practice Book § 38-23 does not specify the exact legal test to be used in making this good cause

---

[4] The factors that Flavio urges us to adopt include, but are not limited to, an examination of the circumstances that caused the accused's flight, the cost and prejudice to the state, mitigating circumstances, the efforts of the surety to locate and apprehend the accused, and the public's interest in the appearance of the accused at trial.

determination, this state has followed the common-law rule as set forth in *Taylor* v. *Taintor*, supra, 83 U.S. 366, which affirmed the decision of the Connecticut Supreme Court of Errors in *Taintor* v. *Taylor*, supra, 36 Conn. 242. See *Taylor* v. *Taintor*, supra, 83 U.S. 375. In *Taintor* v. *Taylor*, supra, 36 Conn. 242, the accused in a criminal case in this state was released on a surety bond and subsequently failed to appear for his trial because he was arrested in New York and extradited to Maine to face criminal charges pending in that state. See id., 251–54; see also id., 242–44 (providing more specific rendition of facts that is not part of court's opinion). Upon the accused's failure to appear, the trial court in this state forfeited the bond, and the state brought an action against the sureties to collect on the debt. See id., 251, 255; see also *Taylor* v. *Taintor*, supra, 83 U.S. 368. The trial court reserved the question of whether the sureties could be released from their debt; see *Taintor* v. *Taylor*, supra, 36 Conn. 244 (rendition of facts); and this court denied relief to the sureties. See id., 255. This court described the applicable common-law rule as follows: "In all criminal cases where a party accused of crime is liberated on bail, the principal and sureties bind themselves that the principal shall appear before the court at the time and place appointed and answer to the crime charged against him. The form of the recognizance is without reservation or condition, but the law excuses the sureties if they are prevented by the act of God, or by the act of the law, or by the act of the obligee, from fulfilling the requirements of the bond." Id., 252. Applying this standard, the court concluded that the sureties had failed to satisfy any of these conditions because it was the wilful act of the accused, namely, a criminal act in Maine resulting in detention in that state, that caused his absence from trial in this state. Id., 253, 255. Therefore, this court ordered that judgment be rendered for the state. Id.,

255. The sureties filed a writ of error with the United States Supreme Court, and that court affirmed the judgment of the Connecticut Supreme Court of Errors. *Taylor* v. *Taintor*, supra, 83 U.S. 367, 375. In reaching its decision, the United States Supreme Court applied the same common-law test for the release of a bail surety: "It is the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of the law. Where the principal dies before the day of performance, the case is within the first category. Where the court before which the principal is bound to appear is abolished without qualification, the case is within the second. If the principal is arrested in the [s]tate where the obligation is given and sent out of the [s]tate by the governor, upon the requisition of the governor of another [s]tate, it is within the third." Id., 369–70. The United States Supreme Court, like the Connecticut Supreme Court of Errors, concluded that the accused's own actions caused his absence at trial and that the sureties therefore were not entitled to release from their obligation. See id., 374; see also id. (accused could not "be allowed to avail himself of an impossibility of performance [that he has] created; and what will not avail him cannot avail his sureties").

Although this court has not had occasion to apply the rule for some time; see *State* v. *Pashall*, 118 Conn. 645, 649, 174 A. 175 (1934) (applying *Taylor* rule); this passage of time does not render the rule any less applicable today than when it was announced. Cf. *State* v. *Nugent*, 199 Conn. 537, 544–45, 508 A.2d 728 (1986) (applying common-law rule in *Taylor* in determining surety's power to apprehend principal without court order).

We are not persuaded that we should overturn our prior holdings on this issue. This court adheres to the

doctrine of stare decisis, which cautions us not to overturn our prior holdings unless "the most cogent reasons and inescapable logic require us to do so." (Internal quotation marks omitted.) *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 650, 6 A.3d 60 (2010). In support of its argument, Flavio notes that several other jurisdictions employ a "multifaceted" approach that permits courts to examine a number of factors beyond those in *Taylor* when determining whether to release a surety.[5] Flavio, however, has not demonstrated that the laws applicable to the bail systems in those jurisdictions are sufficiently similar to those in this state. Moreover, Flavio has not explained why the standards used by those jurisdictions are superior to that of the common-law rule at fulfilling the purposes of our bail system. Nor has it provided any reasons why the rule in *Taylor* should be abandoned. Other than its citation to the holdings of cases from other jurisdictions

[5] See, e.g., *United States* v. *Frias-Ramirez*, 670 F.2d 849, 851 (9th Cir.) (applying multifactor test applicable to release of sureties pursuant to earlier version of rule 46 of Federal Rules of Criminal Procedure, which permitted courts to set aside all or part of forfeiture if "justice [did] not require the enforcement of the forfeiture" [internal quotation marks omitted]), cert. denied sub nom. *Frias* v. *United States*, 459 U.S. 842, 103 S. Ct. 94, 74 L. Ed. 2d 86 (1982); *State* v. *Fry*, 128 Idaho 50, 53, 910 P.2d 164 (App. 1994) (considering several factors when determining whether to release surety from obligation under rule of procedure allowing forfeiture of bond to be set aside when "justice does not require the enforcement of the forfeiture" [internal quotation marks omitted]); *Irwin* v. *State*, 17 Md. App. 518, 523, 302 A.2d 688 (1973) (permitting courts to exercise liberal discretion in determining whether to release surety pursuant to rule allowing release when there are " 'reasonable grounds for nonappearance' " of accused at trial). Even in those states that permit trial courts to exercise broad discretion in determining whether to compromise or release a surety's obligation, the inability to recapture the accused after he has wilfully fled the country will not necessarily result in a release of the obligation. See *State* v. *Shredeh*, 909 S.W.2d 833, 836 (Tenn. Crim. App. 1995) (upholding trial court's decision to excuse portion of bond when accused fled to foreign jurisdiction while noting that release would be permitted only "on account of death or some other condition of affairs, if any can exist, which make it equally impossible . . . to surrender [the defendant]" [internal quotation marks omitted]), appeal denied, 1995 Tenn. LEXIS 515 (Tenn. September 5, 1995).

and its expression of its desire that we change our law, Flavio simply has not provided any "cogent reasons" or "inescapable logic" that would require us to overturn our long-standing precedent. (Internal quotation marks omitted.) Id.

Moreover, we are persuaded that there are good reasons to maintain the *Taylor* rule. The purpose of the bail system is to reduce the expense of the state in detaining the accused pending trial by permitting pretrial release, subject to certain conditions, such as the posting of bond, to ensure the appearance of the accused at trial. See generally P. Rice, "Bail and the Administration of Bail in the State of Connecticut," 4 Conn. L. Rev. 1 (1971). By posting bond for the accused, the surety willingly takes custody of the accused in place of the state and insures the state against the risk of flight by accepting responsibility for the consequences thereof. See, e.g., *Taylor* v. *Taintor*, supra, 83 U.S. 371–72. Because the surety has full knowledge of this risk and nevertheless insures against it, the law should not easily release the surety from its obligations when the very event that it insures against occurs. This principle is especially strong when, as in the present case, it is the wilful act of the accused that deprives the state of the accused's appearance at trial. These considerations lead us to conclude that the *Taylor* rule appropriately permits discharge of the surety only when appearance at trial is made impossible by an act of God, an act of the state, or pursuant to law. This rule is tempered by the mandatory sixth month stay of forfeiture, which permits a surety to make further attempts to return the accused to the custody of the state. See Practice Book § 38-21 (b); see also General Statutes § 54-65a (a). It is further tempered by Practice Book § 38-22, which permits a rebate of a portion of the amount forfeited in the event that the accused is delivered to the custody of the state within one year or less of the order of

forfeiture. We are confident that these rules, taken together, appropriately ensure that sureties will enter into their obligation with caution, remain vigilant in ensuring the appearance of the accused at trial and assist the state in apprehending the accused in the event of flight. Therefore, we decline to overturn our prior precedent by abandoning our adherence to the *Taylor* rule.

We now turn to the issue of whether the trial court properly concluded that Flavio failed to show good cause under the *Taylor* rule. Flavio argues that it has demonstrated good cause because (1) it made substantial efforts to locate Sheriff in Jamaica so that the state may initiate extradition proceedings, (2) the state has declined to initiate extradition proceedings, and (3) Flavio cannot legally go to Jamaica to apprehend Sheriff without an extradition order. We disagree that these facts establish good cause.

Applying the *Taylor* rule to the facts of the present case,[6] we are convinced that the trial court properly concluded that Flavio was not entitled to relief because none of the facts on which Flavio relies prevented Sheriff from appearing for trial; nor do they prevent Sheriff from returning to this jurisdiction. First, none of these facts implicates an act of God. Second, Sheriff's failure to appear at trial and his continued absence from the jurisdiction did not result from any act of the state.

[6] Because the release of a bail surety pursuant to Practice Book § 38-23 is not discretionary but, rather, requires the trial court's application of the rule in *Taylor* to the facts as found by the court, our review of the trial court's application of the law is plenary. Cf. *Lindholm* v. *Brant*, 283 Conn. 65, 77, 925 A.2d 1048 (2007) ("So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations . . . [require] plenary review by this court . . . . When legal conclusions of the trial court are challenged on appeal, we must decide whether [those] . . . conclusions are legally and logically correct and find support in the facts that appear in the record." [Internal quotation marks omitted.]).

The record demonstrates that Sheriff wilfully fled to Jamaica two days prior to his trial date and has not since returned. No act of the state compelled Sheriff to flee, and no act of the state is preventing Sheriff from returning to this state to stand trial. There is absolutely no evidence to demonstrate that Sheriff's failure to appear or his continued absence from this state is the result of anything but his own will. Moreover, even if we assume that the chief state's attorney could have extradited Sheriff from Jamaica, in the absence of any promise by the chief state's attorney that he would seek extradition of Sheriff in the event that he fled, the chief state's attorney had no obligation to Flavio to extradite Sheriff from Jamaica in order to fulfill the obligations that Flavio willingly undertook. As one court has observed, "[t]he state is not the surety's surety." *Umatilla County* v. *Resolute Ins. Co.*, 8 Or. App. 318, 322, 493 P.2d 731 (1972). Finally, no law has prevented Sheriff from appearing for trial. Although it is true that the law prevents Flavio from apprehending Sheriff in Jamaica in the absence of an extradition order, nothing in the operation of the law has prevented Sheriff from appearing at trial or returning to this jurisdiction. The fact that Flavio cannot compel Sheriff to return to this state so that Flavio can fulfill its obligation is primarily the result of Sheriff's decision to flee to Jamaica, and Flavio must accept the consequences of that decision. See, e.g., *Taylor* v. *Taintor*, supra, 83 U.S. 372 ("The sureties had the control of [their principal]; they were bound at their peril to keep him within their jurisdiction, and to have his person ready to surrender when demanded. . . . [T]he failure of the sureties to surrender their principal . . . was, in the view of the law, the result of their own negligence or connivance, in suffering their principal to go beyond the jurisdiction of the court and from under their control." [Internal quotation marks omitted.]); *Professional Bail Bonds,*

*Inc.* v. *State*, 185 Md. App. 226, 244–45, 968 A.2d 1136 (2009) ("The danger that a defendant may flee the jurisdiction of the court is a known risk that the bail bondsman assumes and provides insurance against. . . . The surety is furnished by law with sweeping prerogatives vis-á-vis its client to guard against the precise risk of [flight to a foreign jurisdiction], and the surety therefore bears full responsibility for what happens. . . . [The surety] in [this] situation is no helpless victim deserving of the law's sympathy or pity." [Citation omitted.]). Because Flavio cannot establish a sufficient excuse for Sheriff's failure to appear at trial as a result of Sheriff's wilful flight from the jurisdiction, we conclude that the trial court properly denied Flavio's petition.

We briefly address Flavio's claim that the trial court incorrectly concluded that there was no conflict of interest within the office of the chief state's attorney that would support a showing of good cause. Flavio argues that the chief state's attorney's responsibility to collect on bond forfeitures on behalf of the state; General Statutes § 51-279b (b); conflicts with his discretion to compromise on the amount of a bond; General Statutes § 51-279b (b); or to seek extradition; General Statutes § 51-277 (d) (1); which could result in the release of a surety's obligations altogether. According to Flavio, because the state holds a pecuniary interest in collecting on a forfeited bond, the chief state's attorney will be pressured to forgo compromise or extradition simply to obtain additional revenue for the state at the expense of sureties and that this is sufficient to demonstrate good cause for release. We disagree.[7]

---

[7] We note that Flavio, in making its arguments to this court that this alleged conflict of interest established good cause, cited two decisions of the United States Supreme Court in which that court concluded that a conflict of interest within the judicial authority denied criminal defendants their rights to due process of law. See *Ward* v. *Monroeville*, 409 U.S. 57, 60–61, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972); *Tumey* v. *Ohio*, 273 U.S. 510, 523, 47 S. Ct. 437, 71 L. Ed. 749 (1927). Flavio did not raise this argument as a constitutional due process claim, however. Therefore, we consider this

This claimed conflict of interest simply is not relevant to the court's determination of good cause pursuant to Practice Book § 38-23 because there is no claim that this conflict is responsible for Sheriff's failure to appear. Even if we assume that a conflict exists, this conflict did not cause Sheriff to flee before trial and has not prevented him from returning to stand trial. Therefore, whether the chief state's attorney has a conflict of interest in deciding to extradite Sheriff does not implicate any of the *Taylor* factors and is not relevant to the determination regarding whether good cause has been established.

The writ of error is dismissed.

In this opinion the other justices concurred.

argument in the context of Flavio's claim regarding good cause pursuant to Practice Book § 38-23.