******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JAY GARCIA
(AC 39851)

Alvord, Sheldon and Keller, Js.

*Syllabus*

The plaintiff in error, A Co., a bail bonds company, brought this writ of error from the decision of the trial court denying a motion it had filed for discharge from its obligation under a certain bond that it had executed to obtain the release from custody pending trial of a criminal defendant, G, who had absconded to Peru. Following G's failure to appear at a scheduled court hearing, G was ordered rearrested and his bond forfeited. In seeking the discharge of its obligation under the bond, A Co. claimed that the bond was issued by certain of its agents who were not authorized to issue bonds. A Co. also filed a motion to compel the defendant in error, the state of Connecticut, to seek extradition of G because, according to A Co., the state previously had promised to do so, and the trial court denied that motion. The trial court found that A Co. had failed to demonstrate good cause to be relieved of its bond obligations as required by the applicable rule of practice (§ 38-23) and that the state was under no obligation to pursue extradition. *Held*:

1. The trial court, in denying A Co.'s motion for discharge from its obligation under the bail bond, applied the correct legal standard as set forth in *Taylor* v. *Taintor* (83 U.S. [16 Wall.] 366), which provides that a surety will be discharged of its obligation on a bail bond for good cause only when the performance of the condition of the bond is rendered impossible by an act of God, an act of the obligee, which, in this case, is the state, or an act of law: our Supreme Court previously has applied the rule in *Taylor* for determining whether a surety has provided good cause for being relieved of its obligation on a bond, and although the legislature expanded the common-law definition of good cause by statute (§ 54-65c), this court was bound by our Supreme Court's precedent holding that the rule in *Taylor* continued to govern in cases in which the conditions set forth in § 54-65c did not apply, namely, where a criminal defendant voluntarily leaves the country and is not held in governmental custody elsewhere, which was the case here; moreover, G's status under federal immigration law, which made it illegal for him to return to this country, was not an act of law that made G's compliance with the bond obligation impossible, nor did it constitute good cause to excuse A Co.'s performance under the *Taylor* rule, as an act of law that renders the performance on a bond obligation impossible must involve a law operative in the state where the obligation was assumed, and no laws of this state made G's compliance with the bond impossible.

2. A Co. could not prevail on its claim that the trial court, as part of its good cause analysis, should have considered the relevance of the state's indication that it would extradite upon notification that G was in the custody of Peruvian authorities; there was nothing in the record indicating that, prior to A Co.'s decision to post bond on behalf of G, the state promised to extradite G if he fled to another country, which would have been a factor relevant to good cause because the surety could have relied on the state's representation in assessing the risk of G's nonappearance, A Co. did not challenge the trial court's finding that the state made no promise to extradite when the bond was executed, and it provided no authority for the proposition that a prosecutor's indication after a principal has absconded that the state intended to extradite was a relevant consideration to the court's determination of whether good cause existed to discharge the obligation on the bond.

Argued September 15—officially released December 12, 2017

*Procedural History*

Writ of error from the decision of the Superior Court in the judicial district of New Britain, geographical area number fifteen, *Alexander, J.*, denying a motion by the plaintiff in error for discharge from certain surety bond

obligations, brought to the Supreme Court, which transferred the matter to this court. *Writ of error dismissed.*

*James R. Hardy II*, for the plaintiff in error (Afford-A-Bail, Inc.).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Mary Rose Palmese*, supervisory assistant state's attorney, for the defendant in error (state).

*Opinion*

KELLER, J. In this writ of error,[1] the plaintiff in error, Afford-A-Bail, Inc. (Afford), claims that the trial court improperly denied its motion to discharge its obligation on a surety bail bond.[2] Afford claims that the court, in denying its motion, improperly concluded that: (1) the standard for demonstrating "good cause" for discharge of an obligation upon a surety bail bond pursuant to Practice Book § 38-23[3] is the standard first set forth in *Taylor* v. *Taintor*, 83 U.S. (16 Wall.) 366, 369–70, 21 L. Ed. 287 (1872), rather than a more holistic, equitable assessment; and (2) the failure of the defendant in error, the state of Connecticut, to extradite the criminal defendant, Jay Garcia, after representing that it would do so, was not relevant to the court's good cause determination. The state argues that the requirement of good cause for discharge of the obligation upon the surety bond pursuant to General Statutes § 54-65c and aspects of the common-law rule in *Taylor* as explicated in *State* v. *Sheriff*, 301 Conn. 617, 21 A.3d 808 (2011), were not satisfied. We conclude that the trial court properly denied Afford's motion to discharge its obligation on the surety bond and, therefore, we dismiss the writ of error.

The following allegations of fact by Afford and procedural history are necessary for our resolution of this writ of error.[4] In the underlying criminal case, the criminal defendant, who identified himself to police as Garcia, was arrested and charged with robbery in the first degree in violation of General Statutes § 53a-134, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 52a-134, larceny in the sixth degree in violation of General Statutes § 53a-125b, and conspiracy to commit larceny in the sixth degree in violation of §§ 53a-48 and 53a-125b. These crimes were alleged to have been committed on or about December 20, 2014. Garcia was arraigned in court on December 22, 2014. Bond was set at $75,000 and the case was continued to February 3, 2015. Garcia subsequently executed a $75,000 bond with surety for his appearance at future court dates. Afford is the surety on the bond. On February 3, 2015, Garcia failed to appear and the court ordered Afford's bond forfeited and imposed a six month statutory stay pursuant to General Statutes § 54-65a.[5]

On April 29, 2015, Afford filed a motion to vacate bond forfeiture. In its motion, it asserted the following: "Upon being arrested by the local authorities, [Garcia] was processed. However, the true identity of [Garcia] was never verified or his passport seized, due to the fact that he is an illegal immigrant. [Garcia's] legal name is Jonatan Lovis Mattos. . . .

"Subsequent to the offense date in which [Garcia] was criminally charged (December 20, 2014), [Afford]

became bo[u]nd by a bail bond, as surety, in the amount of $75,000 for the appearance of [Garcia]. . . .

"Following the issuance of the bond, [Garcia] was ordered by this court to appear on February 3, 2015. [Garcia] failed to appear for his scheduled court hearing and a rearrest [order] was issued. . . .

"It was discovered that on February 22, 2015, [Garcia] fled the jurisdiction of the United States from Bradley International Airport in Windsor Locks . . . and absconded to Lima, Peru.[6] . . .

"Officer Nestor Silva Angeles, of the National Police of Peru—Division of Criminal Investigations, has confirmed the location of [Garcia].[7] . . .

"The country of Peru will not detain the defendant unless the state . . . extradites him.[8] . . .

"It is presumed that the Office of the State's Attorney [in] New Britain will decline to seek extradition of [Garcia] given his location in another country. . . .

"The bond was written by an agent of [Afford], who was not authorized to write bonds for subjects who are classified as undocumented, and as a result, [this agent's employment] was terminated from [Afford's] company." (Footnotes added.)

On July 21, 2015, the court denied Afford's motion and declined to vacate the forfeiture ordered on the bond. On August 3, 2015, Afford filed a motion for extension of satisfaction of the bond forfeiture, which was denied on August 4, 2015.

On September 4, 2015, Afford filed a motion for reconsideration of its motion for extension of satisfaction of the bond forfeiture and a motion to compel the extradition of Garcia. In the latter motion, Afford alleged that the denial of its motion to vacate the bond forfeiture on July 24, 2015, was exclusively based on the fact that the state had represented that it would extradite Garcia and had initiated the extradition process. On September 4, 2015, the court granted Afford's motion for reconsideration of its motion for extension of satisfaction of the bond forfeiture and extended the stay of the forfeiture of the bond.

On October 6, 2015, the court heard argument on Afford's motion to compel extradition. Afford also again moved, by way of an oral motion, to have its obligation on the bond discharged pursuant to Practice Book § 38-23.[9]

Counsel for Afford provided two arguments in support of its motion to discharge. First, Afford's counsel alleged that the state made a representation in court three months earlier that it would extradite Garcia back to the United States and that it should be compelled to take the necessary steps to extradite Garcia and provide written documentation of such efforts within thirty

days. In the alternative, counsel requested that Afford's obligation on the bond be vacated due to the state's lack of action.[10] In response to this argument, the state's attorney indicated: "It has been made clear that we certainly intend to extradite [Garcia]. . . . I don't know what inquiries were made, but this is a fully extraditable offense. That the bondman should not be let off the bond for that reason because it's extraditable and because we intend to extradite once the Peruvian authorities notify us that [Garcia] is in custody." Counsel for Afford responded that the state's attorney had not taken any steps to put an extradition into place. The court indicated that the state had no obligation to seek extradition and denied the motion to compel extradition.

Second, counsel for Afford argued that its "rogue agents," for their own monetary gain, lied about Garcia's alienage to obtain authorization to write the bond. Rather than rule on Afford's oral motion to discharge its obligation on the bond at that time, the court continued the hearing and indicated that it would terminate the stay that had been imposed on the bond forfeiture 2 p.m. on December 14, 2015, if there was no further information from Afford by that time, and provided Afford with an opportunity to provide affidavits substantiating its allegations of fraud on the part of its rogue agents, to produce Garcia on that date or to prove that an extradition had been initiated by that date.

Subsequently, on December 8, 2015, Afford filed two affidavits signed by Shane Burby, the owner of Afford, and William Munck, its operations manager. According to both Munck and Burby, former employees named Daniel Ruiz and Jesus Agosto provided them with "false and omitting" information as to the status of Garcia's employment. The affidavits stated that their agents also falsely advised them that Garcia was a United States citizen and his father was a former police officer. This erroneous information led them to believe that Garcia was not a flight risk, resulting in approval of the bond without requiring collateral.

On December 14, 2015, the court, after a hearing, denied Afford's oral motion to discharge its obligation on the surety bond and again denied its motion to compel extradition.[11] On December 30, 2015, Afford filed this writ of error.

On February 6, 2016, the court issued a written memorandum of decision articulating its reasons for its denial of Afford's oral motion for discharge of its obligation on the bond and motion to compel extradition.[12] The court stated: "[Afford's] arguments and the facts upon which it relies do not entitle [Afford] to any relief from this court because they do not constitute good cause . . . . This court notes that [Afford] was not entitled to an order vacating bond forfeiture pursuant to . . . § 54-65c because it did not provide proof of [Garcia's]

incarceration in or removal to another country. No proof was provided because [Garcia] was not, in fact, incarcerated in Peru, or removed to Peru . . . . It was the wilful act of the accused which caused his departure from this country and his nonappearance for trial, not an act of God, an act of the obligee, or an act of law.

"The [representation by the] state's attorney's [office] . . . that it will extradite [Garcia] is not relevant to the question at hand. . . . The [state] was not a party to the agreement between [Garcia] and [Afford], and did not promise, when the bond was executed, to extradite [Garcia] in the event that he flees.

"Likewise, the actions of [Afford's] agents in executing the bond are not relevant to the determination of whether good cause has been established . . . . These actions may have violated [Afford's] procedures, but they are not an act of God, an act of the obligee, or an act of law that prevented [Afford] from fulfilling the requirements of the bond."

I

Afford first claims that the trial court improperly concluded that the standard for demonstrating "good cause" for discharge of an obligation upon a bond pursuant to Practice Book § 38-23 is the standard first set forth in *Taylor* v. *Taintor*, supra, 83 U.S. 369–70, rather than a more holistic, equitable assessment that presumably would consider the alleged fraudulent actions of its agents and the state's failure to follow through on its alleged July 24, 2015 promise to initiate the extradition process for Garcia as good cause to discharge its obligation upon the bond.

We begin with the standard of review. "The interpretation of a rule of practice is a question of law, subject to plenary review . . . and such an interpretation begins with the text of the provision at issue." (Citation omitted.) *State* v. *Sheriff*, 301 Conn. 617, 622, 21 A.3d 808 (2011).

Although Practice Book § 38-23 does not specify the exact legal test to be used by a court in determining good cause, this state has followed the common-law rule set forth in *Taylor* v. *Taintor*, supra, 83 U.S. 366, which affirmed the decision of the our Supreme Court in *Taintor* v. *Taylor*, 36 Conn. 242, 255 (1869), that a surety will be relieved of its obligation on a bail bond only when "the performance of the condition [of the bond] is rendered impossible by the act of God, the act of the obligee, or the act of the law" (*Taylor* rule).[13] *Taylor* v. *Taintor*, supra, 83 U.S. 369. This common-law rule was reaffirmed in *State* v. *Sheriff*, supra, 301 Conn. 626. The legislature, by enacting § 54-65c in 2011 and amending it in 2014, has since expanded the common-law definition of "good cause."[14]

In *Taylor*, the criminal defendant and principal on the bond, Edward McGuire, was released after posting

bond in a Connecticut criminal court. *Taylor* v. *Taintor*, supra, 83 U.S. 368. He later voluntarily left Connecticut for New York and failed to appear in court as ordered. Id. Meanwhile, Maine issued a governor's requisition to New York to take custody of McGuire so he could be prosecuted on a pending burglary charge in Maine, and New York delivered him to proper officers of the state of Maine. Id. Neither of the two sureties on the bond knew, when they entered into the recognizance, that McGuire had a burglary charge pending in Maine. Id., 369. After McGuire was sent to Maine, he was convicted and sentenced to a term of incarceration of fifteen years. Id., 368. During his confinement, the Connecticut court forfeited the bond. Id.

Henry G. Taintor, the Connecticut state treasurer, brought an action against McGuire and the sureties on his bond to collect the debt on the recognizance. *Taintor* v. *Taylor*, supra, 36 Conn. 242. The sureties sought to be discharged from their obligation claiming that they did not know at the time they posted bond for McGuire that he had charges pending against him in Maine. They had not acted in New York to obtain custody of McGuire after he had left Connecticut. *Taylor* v. *Taintor*, supra, 83 U.S. 368–69. The sureties claimed they were excused by acts of both the law and the obligee.

The United States Supreme Court provided examples of what would satisfy each of the common-law conditions of the *Taylor* rule. An act of God occurs when the bonded defendant "dies before the day" on which he must appear. *Taylor* v. *Taintor*, supra, 83 U.S. 369. An act of the obligee, or the party protected by the bond, which is the state, occurs when the state does something that makes it impossible for the defendant to appear in its courts, such as abolishing the court in question without qualification. Id. The third condition, an act of law, arises when the state protected by the bond takes custody of the defendant and then surrenders his custody to another state, thereby exercising control of the defendant in such a way as to make compliance with the bond impossible. Id., 369–70. Because Connecticut had not abolished the court in which McGuire was required to appear, the court in *Taylor* focused on the third condition and stated that good cause cannot exist as an act of law when McGuire voluntarily removed himself from Connecticut by crossing the border into New York. Id., 370. "There is a distinction between an act of the law proper and the act of the [criminal defendant], which exposes him to the control and action of the law. While the former exonerates, the latter gives no immunity." (Internal quotation marks omitted.) Id.

The defendant sureties in *Taylor* argued that the case fell into the act of law condition because even though McGuire left Connecticut of his own volition, an act

of law rendered his appearance impossible due to the lawful arrest and transfer of McGuire to Maine as a result of the cooperation between authorities in New York and Maine. Id., 368. In rejecting this argument, the court stated that it considered New York and Maine "strangers" to the bond agreement and held that an act of law that makes it impossible for the criminal defendant to appear must derive from the protected state's action, in other words, Connecticut's action, which did not occur in *Taylor*. Id., 373–74.

The sureties in *Taylor* also argued that their obligation should be discharged because they were not made aware of McGuire's pending charge in Maine, but the Supreme Court considered the sureties at fault for McGuire's departure and also stated that it was their duty to be aware of his arrest when it occurred and to interpose their claim for custody. Their resulting loss, the court concluded, was "due to [the sureties'] own supineness and neglect." *Taylor* v. *Taintor*, supra, 83 U.S. 373. "The principal in the case before us, cannot be allowed to avail himself of an impossibility of performance he created; and what will not avail him cannot avail his sureties. His contract is identical with theirs. They undertook for him what he undertook for himself." Id., 374.

In *State* v. *Sheriff*, supra, 301 Conn. 617, the plaintiff in error, Flavio Bail Bonds, LLC (Flavio), executed three bonds for David Sheriff, the criminal defendant, for each of his cases and Sheriff was released from custody. Id., 619. Subsequently, Sheriff failed to appear and it was revealed that, two days prior to trial, he had fled to Jamaica and remained there. Id., 620. Flavio located a likely address for Sheriff in Jamaica, but the chief state's attorney declined to initiate extradition proceedings. Id.

Bringing a writ of error from the trial court's denial of its request to have its obligation on the bond compromised or discharged, Flavio contended that its efforts to locate Sheriff after his failure to appear and the chief state's attorney's subsequent decision not to seek extradition of Sheriff established good cause for relieving Flavio of its obligation on the bonds. Id., 618, 621. Similar to the nature of the claim Afford asserts here—that the court should have applied a more holistic, equitable assessment rather than the *Taylor* rule—Flavio argued that the *Taylor* rule was antiquated and unduly restrictive and asked our Supreme Court to adopt a standard consistent with "emerging jurisprudence," requiring a "multifaceted examination of the circumstances rather than holding tightly to any absolute rule." (Internal quotation marks omitted.) Id., 622. Flavio asserted that several other jurisdictions employ a "multifaceted" approach permitting courts to examine a number of factors beyond the condition in the *Taylor* rule when determining whether to discharge a surety

from a bond obligation. Id., 625. Our Supreme Court declined to expand the *Taylor* rule, and in applying it, suggested that unless the state had promised to extradite a criminal defendant should he become a fugitive, the state's decision not to seek extradition was not an act of law warranting a surety's discharge from its obligation on a bond. Id., 628.

In *State* v. *Agron*, 323 Conn. 629, 148 A.3d 1052 (2016), which our Supreme Court officially released on November 22, 2016, after Afford filed its brief but before the state filed its brief,[15] the court applied § 54-65c[16] in deciding another writ in error involving the denial of a request to discharge an obligation on a bond as a result of the principal, Angel Agron, failing to appear in court after voluntarily fleeing to and remaining in Puerto Rico. Id., 631. Although bail enforcement agents had located Agron in Puerto Rico and made him aware of his warrants for failure to appear in Connecticut, the state did not seek extradition. Id. The court held that the word "detained" in § 54-65c does not include being detained by bail enforcement agents but rather referred to being detained by and held in the custody of a governmental entity. Id., 639. The court also suggested, referring to its previous holding in *Sheriff*, the facts of which it considered comparable to the facts which led to the forfeiture of the bond in *Agron*, that if a case does not involve facts falling within the statutory conditions set forth in § 54-65c, the *Taylor* rule continues to govern in cases in which the defendant voluntarily leaves the country and is not held in governmental custody elsewhere. See id.

Afford, like the surety in *Sheriff*, is requesting that this court add a new prong to the *Taylor* rule, namely, a prong that considers "extreme, rare, and extraordinary circumstances," such as it alleged occurred in the present case. Because, in *Sheriff*, our Supreme Court, presented with a similar argument, reaffirmed the use of the *Taylor* rule, this argument bears no further discussion. Insofar as Afford is attempting to persuade us to revisit the reaffirmation of the *Taylor* rule in *Sheriff*, we cannot do so. See *Anderson* v. *Commissioner of Correction*, 148 Conn. App. 641, 645, 85 A.3d 1240 ("[i]t is axiomatic that this court, as an intermediate body, is bound by Supreme Court precedent and [is] unable to modify it" [internal quotation marks omitted]), cert. denied, 311 Conn. 945, 90 A.3d 976, cert. denied sub nom. *Anderson* v. *Dzurenda*,    U.S.   , 135 S. Ct. 201, 190 L. Ed. 2d 155 (2014).[17]

As part of its first claim, Afford also argues that even if the trial court properly applied the *Taylor* rule, the present situation falls within the act of law condition of that rule. We apply plenary review to the court's application of the *Taylor* rule to the facts in the present case. *State* v. *Sheriff*, supra, 301 Conn. 628. Afford asserts that because Garcia is an undocumented alien,

absent the state extraditing him, the law prevents him from returning to the United States due to his lack of any valid immigration status that would permit his lawful reentry. Therefore, an act of law prevented Garcia from returning to the United States for his scheduled court appearance, which constitutes good cause under the *Taylor* rule excusing Afford's performance.

In *Taylor*, the Supreme Court stated that for the act of law to render the performance on a bond obligation impossible, it "must be a law operative in the [s]tate where the obligation was assumed." *Taylor* v. *Taintor*, supra, 83 U.S. 371. In *Taylor*, the surety claimed that even though the criminal defendant, McGuire, left Connecticut on his own volition, an act of law rendered his appearance impossible when New York arrested him and transferred him to Maine for prosecution and incarceration there. Id., 371. The court stated that it considered New York and Maine "strangers" to the bond agreement, and held that the act of law that makes it impossible for a defendant to appear must derive from action on the part of the protected state.[18] Id., 374. If Connecticut, rather than New York, had taken custody of McGuire and transferred him to Maine pursuant to its demand, the bond would be excused because an act of the state had deliberately prevented him from returning to Connecticut for his court appearance. See *State* v. *Sheriff*, supra, 301 Conn. 627. Here, Garcia voluntarily leaving the United States for Peru, therefore, does not meet the act of law condition under the *Taylor* rule because Connecticut, the protected state, was not responsible for making his compliance with the bond impossible. Accordingly, this claim fails.

II

Afford's second claim is that, as part of the trial court's good cause analysis, the court should have considered the relevance of the state's indication that it would extradite Garcia. We disagree.

Afford relies on dicta in both *Sheriff* and *Agron* regarding the impact of the alleged promise by the state's attorney on July 24, 2015, to extradite Garcia, in determining whether there was good cause to vacate a bond obligation. In *Sheriff*, our Supreme Court stated: "[E]ven if we assume that the chief state's attorney could have extradited Sheriff from Jamaica, in the absence of any promise by the chief state's attorney that he would seek extradition of Sheriff in the event that he fled, the chief state's attorney had no obligation to Flavio to extradite Sheriff from Jamaica in order to fulfill the obligation that Flavio willingly undertook. As one court has observed, [t]he state is not the surety's surety." (Internal quotation marks omitted.) *State* v. *Sheriff*, supra, 301 Conn. 628. In *State* v. *Agron*, supra, 323 Conn. 629, the court reiterated, citing *Sheriff*, that the state was neither a party to the contract between the surety, 3-D Bail Bonds, Inc., and Agron and, there-

fore, had no responsibilities arising from that contract, nor did the state ever promise that it would extradite Agron in the event that he fled to another country. Id., 639.

First, we note that this is nonbinding authority because neither case expressly holds that failure to fulfill a promise to extradite constitutes good cause excusing performance under the bond. Second, the language on which Afford relies is not applicable to the present case. Both cases refer to a promise to extradite *in the event* the criminal defendant fled. *State* v. *Agron*, supra, 323 Conn. 639, citing *State* v. *Sheriff*, supra, 301 Conn. 628. In this case, the only indication in the record that the state represented it would extradite Garcia is the prosecutor's assertion at the October 6, 2015 hearing, after Garcia already had absconded to Peru, that "we intend to extradite once the Peruvian authorities notify us that he is in custody." There is nothing in the record that shows that prior to Afford's agreement to post bond on behalf of Garcia, the state promised to extradite him if he fled to another country.[19]

The statement in *Sheriff* regarding a promise to extradite only arguably provides a basis for relief if, "at the time bail was posted," the state had promised it would seek extradition if Garcia left the country and, thereafter, the state refused to extradite him. See *State* v. *Mungia*, 446 N.J. Super. 318, 330–31, 141 A.3d 395 (App. Div.), cert. denied, 228 N.J. 91, 154 A.3d 709 (2016). Only then could such a promise possibly be a factor relevant to good cause because the surety would have relied on the state's representation regarding extradition when it assessed the risk of Garcia's nonappearance and this promise would have been factored into what the surety charged for the bond.[20]

Here, the court found that the state had made no promise to extradite "when the bond was executed," a factual finding Afford does not challenge on appeal. Afford cites no authority for the proposition that a prosecutor's indication after a principal has absconded that the state intends to extradite is a relevant consideration to the court's determination of whether good cause exists to discharge the obligation upon the bond.

The writ of error is dismissed.

In this opinion the other judges concurred.

[1] Afford filed the present writ of error in our Supreme Court. Our Supreme Court transferred it to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Afford first filed a "motion to vacate bond forfeiture," which the court, *A. Hadden, J.*, denied on July 21, 2015. Subsequently, on October 6, 2015, Afford made an oral request to the court, *Alexander, J.*, to have its obligation on the surety bond discharged. It is the denial of this oral motion by Judge Alexander on December 14, 2015, that is the judgment from which the petition for writ of error is brought.

[3] Practice Book § 38-23 states: "Where bail has been posted by a bondsman or other surety, such bondsman or surety shall not be relieved of any obligation upon the bond except with the permission of the judicial authority and for good cause shown."

[4] We refer to Afford's declarations as to the factual basis for seeking a discharge of its obligation on the bond as allegations because the record reflects that no testimony or other documentary evidence was introduced in support of them, and the court, in its memorandum of decision, made few factual findings. It appears that the state and the court assumed, *arguendo*, that Afford's allegations, as set forth in its motion to vacate bond forfeiture and attachments thereto and two affidavits subsequently filed with the court, were true.

[5] General Statutes § 54-65a provides in relevant part: "Whenever an arrested person is released upon the execution of a bond with surety in an amount of five hundred dollars or more and such bond is ordered forfeited because the principal failed to appear in court as conditioned in such bond, the court shall, at the time of ordering the bond forfeited . . . order a stay of execution upon the forfeiture for six months."

[6] Attached to Afford's motion to vacate bond forfeiture was a letter from Michelle Vetrano-Antuna, a deportation officer in the Department of Homeland Security, Immigration and Customs Enforcement, dated March 17, 2015, which purportedly verifies that Jonatan Lovis Mattos departed the United State for Lima, Peru, on February 3, 2015. Despite the letter's source, Afford makes no claim that Garcia was deported to Peru.

[7] Also attached to Afford's motion to vacate bond forfeiture was a document, written in Spanish, with an accompanying translation, purportedly signed by Nestor Silva Angeles of the Policia Nacional Del Peru on March 26, 2015.

[8] The court ultimately found that Afford failed to "provide proof of [Garcia's] incarceration in or removal to another country. No proof was provided because [Garcia] was not, in fact, incarcerated in Peru, or removed to Peru. . . . It was the wilful act of the accused which caused his departure from this country and his nonappearance for trial . . . ."

[9] Practice Book § 38-23 provides: "Where bail has been posted by a bondsmen or other surety, such bondsman or surety shall not be relieved of any obligation upon the bond except with the permission of judicial authority and for good cause shown."

[10] These alleged prior representations as to the state's commitment to extraditing Garcia and initiating the extradition process cannot be verified because Afford has not provided this court with the transcript of the court hearing of July 24, 2015.

[11] Inexplicably, we have not been provided with a transcript of the court proceedings on December 14, 2015.

[12] See Practice Book § 64-1 (a).

[13] Death of the principal the day prior to a court appearance is an example of an act of God. See *State* v. *Sheriff*, supra, 301 Conn. 624. Where the court before which the principal is about to appear is "abolished, without qualification," that is an "act of the obligee." Id. If the principal is arrested in the state where the obligation is given and sent out of the state by the governor, upon the requisition of the governor of another state, that is an act of law. Id.

[14] General Statutes § 54-65c provides: "A court shall vacate an order forfeiting a bail bond and release the professional bondsman, as defined in section 29-144, or the surety bail bond agent and the insurer, as both terms are defined in section 38a-660, if (1) the principal on the bail bond (A) is detained or incarcerated (i) in another state, territory or country, or (ii) by a federal agency, of (B) has been removed by United States Immigration and Customs Enforcement, and (2) the professional bondsman, the surety bail bond agent or the insurer provides satisfactory proof of such detention, incarceration or removal to the court and the state's attorney prosecuting the case, and (3) the state's attorney prosecuting the case declines to seek extradition of the principal."

Afford neither alleged nor proved that Garcia was detained or incarcerated in Peru or anywhere else, or that he had been deported by United States Immigration and Customs Enforcement, and, thus, makes no claim that this case satisfied one of the additional conditions for vacating a bond in § 54-65c. For cases not within the statute, the three common-law conditions of the *Taylor* rule, reaffirmed in *Sheriff*, remain binding precedent. See *State* v. *Agron*, 323 Conn. 629, 639, 148 A.3d 1052 (2016).

[15] Afford did not file a reply brief.

[16] Section 54-65c became effective on October 1, 2011, subsequent to the issuance of the decision in *Sheriff*. See Public Acts 2011, No. 11-45, § 24 (1).

[17] Afford's plea that this court take note of the "vast changes that have taken place in the evolution of the bail bond system" which require "expan-

sion of [the] antiquated rule[s] . . . determining when a surety should be released from its obligation" is undermined by the fact that the *Taylor* rule has recently been altered by the legislature's enactment of § 54-65c in 2011; Public Acts 2011, No. 11-45, § 24 (1); and its amendment in 2014; Public Acts 2014, No. 14-184, § 4; to include provisions for discharge of an obligation on a bond in situations where the principal is detained or incarcerated in another state, territory or country or detained by a federal agency, or has been removed by United States Immigration and Customs Enforcement. See General Statutes § 54-65c (A) (i), (A) (ii) and (B). Because we presume that the legislature was aware of the common-law *Taylor* rule and only altered the rule in some respects rather than making sweeping changes to it, and did so after the Supreme Court in *Sheriff* reaffirmed the viability of the rule, we recognize "only those alterations of the common law that are clearly expressed in the language of the statute because the traditional principles of justice [on] which the common law is founded should be perpetuated." *State* v. *Courchesne*, 296 Conn. 622, 669, 998 A.2d 1 (2010).

[18] The dissent in *Taylor* accepted the argument that the criminal defendant's appearance was rendered impossible by an act of law because of New York's legal duty to remit him, upon demand, to Maine. *Taylor* v. *Taintor*, supra, 83 U.S. 377 (Field, J., dissenting). The majority rejected this argument because that the cooperation between New York and Maine, which made it impossible for the defendant to appear in court in Connecticut, was a creature of Maine, New York and federal law. *Taylor* v. *Taintor*, supra, 83 U.S. 374–75.

[19] There was also no compelling reason to extract a promise to extradite from the state at the time. Afford claims it executed the bond because its agents misrepresented that the defendant was a United States citizen, not because the state, prior to the time the bond was executed, asserted that it would extradite Garcia in the event he fled the country. The state should not have to bear the loss from Afford's failure to monitor its agents. The obligation of the bail bondsman is to ensure his principal's appearance in court. *State* v. *Nugent*, 199 Conn. 537, 545, 508 A.2d 728 (1986). Although sureties have the right to utilize agents, the agent and the bail bondsman continue to share the obligation to make sure the principal appears in court. Id., 549. Further, because an agent acts to the benefit of the principal, "the acts of an agent, however, are ascribable or chargeable to the principal." *Connecticut Air Services, Inc.* v. *Danbury Aviation Commission*, 211 Conn. 690, 696, 561 A.2d 120 (1989). The doctrine recognizes that "every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority." (Emphasis omitted; internal quotation marks omitted.) *Gutierrez* v. *Thorne*, 13 Conn. App. 493, 498, 537 A.2d 527 (1988).

[20] The state suggests in its brief that a surety's reliance on the state's promise to extradite before the bond is issued, which somehow binds the state "by something akin to equitable estoppel," would be problematic for the surety because a state prosecutor has control only of *seeking* extradition. After seeking extradition, the state prosecutor has no control beyond that point because extradition is a national power that pertains to the national government and not to the states. *Valentine* v. *United States ex rel. Neidecker*, 299 U.S. 5, 8, 57 S. Ct. 100, 81 L. Ed. 5 (1936). The federal government might refuse to seek extradition, and even if it pursued the matter, the foreign sovereign might refuse to extradite. *State* v. *Mungia*, 446 N.J. Super. 318, 331, 141 A.3d 395 (App. Div.), cert. denied, 228 N.J. 91, 154 A.3d 709 (2016). Equitable estoppel is a mechanism used against the state "(1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." (Internal quotation marks omitted.) *Shanahan* v. *Dept. of Environmental Protection*, 305 Conn. 681, 708, 47 A.3d 364 (2012). The state argues that the second requirement could not be satisfied because all a prosecutor can do is promise to try to extradite, but can never guarantee that such request for extradition would be honored. As a result, it may be unwise for a surety to rely on such a promise when assessing the risk of flight to another country because it might be difficult to assert reasonable reliance on a promise to seek extradition as a basis for equitably estopping the state from enforcing the bond when a defendant flees the country.