******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ANGEL AGRON
(SC 19499)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued September 20—officially released November 22, 2016*

*Paul A. Catalano*, for the plaintiff in error (3-D Bail Bonds, Inc.).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, chief state's attorney, *Michael Dearington*, former state's attorney, and *Leah Hawley*, supervisory assistant state's attorney, for the defendant in error (state).

*Opinion*

EVELEIGH, J. This case is before us on a writ of error brought by the plaintiff in error, 3-D Bail Bonds, Inc. (plaintiff), who claims that the trial court improperly denied its motion seeking relief from its obligation on a surety bail bond (bond) pursuant to General Statutes § 54-65c, which the trial court had ordered forfeited after the principal on that bond, Angel Agron, who is the criminal defendant in the underlying case, failed to appear for a scheduled court date. The defendant in error, the state of Connecticut, responds that the trial court properly denied the motion, claiming that the plaintiff had not satisfied the requirements of § 54-65c because Agron was not "detained" for purposes of § 54-65c when he was personally confronted by fugitive recovery bail enforcement agents in Puerto Rico, and the state refused to extradite him to Connecticut. We conclude that the trial court properly denied the plaintiff's motion and, therefore, dismiss the writ of error.

The record reveals the following relevant facts. In 2006, Agron was arrested and charged with several offenses.[1] The trial court set bail on these charges in an amount totaling $20,000. The plaintiff executed a bond in that amount and Agron was subsequently released from custody.

Agron failed to appear for a scheduled court date on June 23, 2014, and the trial court ordered the total amount of the bond forfeited. Pursuant to General Statutes (Rev. to 2013) § 54-65a (a), the court ordered a six month stay of execution of the forfeiture. Upon being notified of Agron's failure to appear, the plaintiff initiated an investigation that revealed that Agron fled to Puerto Rico and remained there. On December 17, 2014, Agron was personally confronted by bail enforcement agents in Puerto Rico. The state's attorney, however, declined to initiate extradition proceedings.

On December 21, 2014, the plaintiff filed a motion with the trial court to release the plaintiff from its obligation on the bond pursuant to § 54-65c. In support of its motion, the plaintiff filed an affidavit from one of its employees, Andrew J. Bloom, who attested that he spoke with the State's Attorney's Office and informed it that bail enforcement agents had personally confronted Agron. Bloom further averred that, although he requested an authorization for extradition, a representative of the state's attorney had declined his request. The plaintiff also submitted an affidavit in which Agron attested that he was "detained" in Puerto Rico by bail enforcement agents and made aware of his warrants for failure to appear in Connecticut. Agron further attested that he was told that the state was not authorizing extradition and that he was free to go. A photocopy of Agron's identification card and a photograph of him holding a Puerto Rican newspaper dated December 17,

2014, were also attached to the motion.

The trial court denied the motion and the plaintiff sought reconsideration. After considering briefs from both parties and conducting a hearing, the trial court denied the plaintiff's motion for reconsideration. In its memorandum of decision, the trial court reasoned as follows: "[Agron] has not been proven to be in custody of the authorities in Puerto Rico; rather, bail enforcement agents *made contact with him* and he refused to consent to return. The [plaintiff] has not met the burden placed upon it by the statute, namely that [Agron] be detained or incarcerated." (Emphasis added.) The plaintiff thereafter filed a writ of error.

The plaintiff claims that the trial court improperly denied its motion for relief from bond under § 54-65c because the trial court incorrectly interpreted the term "detained" as used in the statute. Specifically, the plaintiff asserts that the legislature intended the term "detained" to include action by a bail enforcement agent to capture the principal.[2] In response, the state asserts that for the purposes of § 54-65c, the term "detained" requires state action. Specifically, the state asserts that, to satisfy the "detained" requirements of § 54-65c, a surety holder must show that the principal is detained by the government of another state, territory or country, not simply the personal contact made by a bail enforcement agent. We agree with the state and conclude that the trial court properly concluded that the plaintiff had not met the requirements of § 54-65c.

At the outset, we set forth the standard of review that applies to the plaintiff's claim. The question of whether § 54-65c affords relief for a surety holder upon demonstrating that the principal has been located and personally confronted by a bail enforcement agent presents a question of statutory construction.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Chairperson, Connecticut Medical Examining*

*Board* v. *Freedom of Information Commission*, 310 Conn. 276, 283, 77 A.3d 121 (2013). The issue of statutory interpretation presented in this case is a question of law subject to plenary review. See id., 282–83.

We begin with the text of the statute. Section 54-65c provides as follows: "A court shall vacate an order forfeiting a bail bond and release the professional bondsman, as defined in section 29-144, or the surety bail bond agent and the insurer, as both terms are defined in section 38a-660, if (1) the principal on the bail bond (A) is detained or incarcerated (i) in another state, territory or country, or (ii) by a federal agency, or (B) has been removed by United States Immigration and Customs Enforcement, and (2) the professional bondsman, the surety bail bond agent or the insurer provides satisfactory proof of such detention, incarceration or removal to the court and the state's attorney prosecuting the case, and (3) the state's attorney prosecuting the case declines to seek extradition of the principal."

Resolution of the plaintiff's claim requires us to determine whether Agron was "detained" for purposes of § 54-65c when the bail enforcement agents personally located him and confronted him in Puerto Rico. "Detained" is not defined in § 54-65c. In accordance with General Statutes § 1-1 (a), we, therefore, look to the common usage of the word "detain" to discern the definition intended by the legislature in § 54-65c. See, e.g., *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 633, 6 A.3d 60 (2010). "In the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Saturno*, 322 Conn. 80, 90, 139 A.3d 629 (2016).

The term "detain" is defined with substantial similarity in a number of dictionaries. Webster's Third New International Dictionary (2002) defines "detain" as, inter alia, "to hold or keep in or as if in custody . . . ." The American Heritage College Dictionary (4th Ed. 2007) similarly defines "detain" as, inter alia, "[t]o keep in custody or temporary confinement." Finally, the American Heritage Dictionary of the English Language (5th Ed. 2011) also defines "detain" as, inter alia, "[t]o keep in custody or confinement . . . ." Applying the dictionary definition of "detain" supports that the legislature intended § 54-65c to require governmental action.

"When determining the legislature's intended meaning of a statutory word, it also is appropriate to consider the surrounding words pursuant to the canon of construction noscitur a sociis.[3] *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 159, 12 A.3d 948 (2011).

By using this interpretive aid, the meaning of a statutory word may be indicated, controlled or made clear by the words with which it is associated in the statute. *State* v. *Roque*, 190 Conn. 143, 152, 460 A.2d 26 (1983)." (Footnote in original.) *State* v. *LaFleur*, 307 Conn. 115, 133, 51 A.3d 1048 (2012). In § 54-65c, the legislature chose to use the word "detained" in association with the term "incarcerated." "Incarcerated" necessarily indicates confinement by government. See The American Heritage College Dictionary, supra (defining "incarcerate" as "[t]o put into jail"); Webster's Third New International Dictionary, supra (defining "incarcerate" as "to put in prison: imprison"). A review of other statutes in which the legislature has used the term "detained" in connection with the term "incarcerated" demonstrates that in using the two words together, the legislature intended to refer to custody by a government agent. See General Statutes § 54-142g (d) (4) (all persons "detained or incarcerated in any correctional facility in this state"); General Statutes (Supp. 2016) § 18-81cc (a) ("[a]ny agency of the state or any political subdivision of the state that incarcerates or detains adult or juvenile offenders, including persons detained for immigration violations, shall, within available appropriations, adopt and comply with the applicable standards recommended by the National Prison Rape Elimination Commission for the prevention, detection and monitoring of, and response to, sexual abuse in adult prisons and jails, community correction facilities, juvenile facilities and lockups"). Therefore, the legislature's use of the term "incarcerated" in connection with "detained" in § 54-65c is further indication that the legislature intended "detained" to require governmental action.

Furthermore, a review of other statutes reveals that the legislature has repeatedly used the term "detained" to refer to governmental action. For instance, in General Statutes § 46b-133, the term "detain" or "detained" is used throughout the statute to refer to the process by which a governmental authority may hold a child in custody when a child is arrested. See General Statutes § 46b-133 (c) ("[u]pon the arrest of any child by an officer, such officer may [1] release the child to the custody of the child's parent or parents, guardian or some other suitable person or agency, [2] at the discretion of the officer, release the child to the child's own custody, or [3] seek a court order to detain the child in a juvenile detention center"). In General Statutes § 54-108d, the term "detain" is used to describe the process by which a probation officer may hold a person in custody. See General Statutes § 54-108d (a) ("[a] probation officer may, in the performance of his or her official duties, detain for a reasonable period of time and until a police officer arrives to make an arrest [1] any person who has one or more unexecuted state or federal arrest warrants lodged against him or her, and

[2] any person who such officer has probable cause to believe has violated a condition of probation and is the subject of a probation officer's authorization to arrest pursuant to subsection [a] of section 53a-32"). In General Statutes § 14-12h, the legislature used the term "detain" to describe the process by which a police officer may address an unregistered motor vehicle being driven on the highway. See General Statutes § 14-12h (b) (1) ("[i]f any police officer observes a motor vehicle being operated upon the public highway, and such motor vehicle is displaying registration number plates identified as suspended . . . such police officer may . . . stop or detain such vehicle and its occupants"); see also General Statutes § 54-126 ("the [Chairman of the Board of Pardons and Paroles] may detain any convict or inmate pending approval by the panel of such retaking or reimprisonment"); General Statutes § 54-192h (b) (addressing requirements for law enforcement officer to detain individual pursuant to civil immigration detainer); General Statutes § 54-53a (addressing detention of individuals accused of crimes who have not made bail in community correction centers); General Statutes § 7-135a (addressing reimbursement for town operating lockup "wherein prisoners are detained for arraignment before, or trial by, the Superior Court"). An examination of these statutes demonstrates that the legislature has consistently used the term "detain" to require governmental action.[4]

It is axiomatic that, when interpreting the terms of one statute, "we are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . Legislation never is written on a clean slate, nor is it ever read in isolation or applied in a vacuum. Every new act takes its place as a component of an extensive and elaborate system of written laws. . . . Construing statutes by reference to others advances [the values of harmony and consistency within the law]. In fact, courts have been said to be under a duty to construe statutes harmoniously where that can reasonably be done. . . . Moreover, statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, 320 Conn. 611, 645, 134 A.3d 581 (2016). Applying this principle to the terms of § 54-65c, we conclude that the plain language of § 54-65c, as read in connection with other statutes, demonstrates that the legislature intended the word "detained" as used in that statute to require custody by a governmental entity.

The plaintiff seems to assert, however, that reading § 54-65c so as to require custody by a governmental entity leads to absurd or unworkable results. Specifically, the plaintiff claims that such an interpretation of the statute prevents a surety from obtaining recourse

under § 54-65c based on the state's decision not to extradite the principal. We disagree. First, the plaintiff's bail contract was between itself and Agron. The state was not a party to that contract and has no responsibilities under that contract. The plaintiff does not assert that the state or any other governmental entity promised that it would extradite Agron in the event that he fled to another country. As we explained in *State* v. *Sheriff*, 301 Conn. 617, 628, 21 A.3d 808 (2011), "even if we assume that the chief state's attorney could have extradited [the principal] from Jamaica, in the absence of any promise by the chief state's attorney that he would seek extradition of [the principal] in the event that he fled, the chief state's attorney had no obligation to [the surety] to extradite [the principal] from Jamaica in order to fulfill the obligations that [the surety] willingly undertook. As one court has observed, '[t]he state is not the surety's surety.' *Umatilla County* v. *Resolute Ins. Co.*, 8 Or. App. 318, 322, 493 P.2d 731 (1972). . . . The fact that [the surety] cannot compel [the principal] to return to this state so that [the surety] can fulfill its obligation is primarily the result of [the principal's] decision to flee to Jamaica, and [the surety] must accept the consequences of that decision." Similarly, in the present case, we are not persuaded that our interpretation of § 54-65c leads to absurd or unworkable results merely because the plaintiff is required to forfeit the bond when Agron fled to a United States territory and the state decided not to extradite him. Instead, we conclude that our interpretation of § 54-65c requires the plaintiff to abide by the terms of the bond agreement, namely, to forfeit the bond if Agron did not appear in court.

On the basis of our conclusion that § 54-65c requires that Agron be incarcerated or detained by a governmental entity, we conclude that the trial court properly denied the plaintiff's motion for relief from bond in the present case. It is undisputed that Agron was not incarcerated or detained by any governmental entity in the present case, accordingly, the plaintiff did not meet the requirements of § 54-65c.

The writ of error is dismissed.

In this opinion the other justices concurred.

[1] Agron was charged with sexual assault in the fourth degree in violation of General Statutes (Rev. to 2005) § 53a-73a and risk of injury to a child in violation of General Statutes (Rev. to 2005) § 53-21.

[2] The plaintiff also asserts that the trial court incorrectly failed to afford it relief under General Statutes § 54-65 (b). Section 54-65 (b) provides that "[i]f the principal of a surety in a recognizance in criminal proceedings absconds, such surety may apply, prior to six months after the date the bond is ordered forfeited, to a judge of the Superior Court to be released from such bond. The judge may release such surety from such bond for good cause shown." A careful review of the record demonstrates that the plaintiff did not assert a claim under § 54-65 (b) before the trial court and, therefore, the trial court did not decide the issue of whether relief was proper under § 54-65 (b) in the present case. "Our appellate courts, as a general practice, will not review claims made for the first time on appeal. We repeatedly have held that [a] party cannot present a case to the trial

court on one theory and then seek appellate relief on a different one . . . . [A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." (Citation omitted; internal quotation marks omitted.) *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 619–20, 99 A.3d 1079 (2014). Accordingly, we do not reach the plaintiff's claim under § 54-65 (b).

[3] Noscitur a sociis translates from Latin, "it is known by its associates . . . ." (Citations omitted; internal quotation marks omitted.) *Graham County Soil & Water Conservation District* v. *United States ex rel. Wilson*, 559 U.S. 280, 287, 130 S. Ct. 1396, 176 L. Ed. 2d 225 (2010).

[4] The plaintiff cites to General Statutes §§ 17a-484 and 53a-119a without analysis. To the extent that the plaintiff is asserting that these statutes demonstrate that the word "detained" does not require state action or that a bail enforcement agent is authorized to "detain" an individual for purposes of § 54-65c, we are not persuaded. First, § 17a-484, which addresses regional mental health boards, does not contain the word "detain" at all. Second, although § 53a-119a (a) and (b) does grant shopkeepers and library agents the authority to "detain" suspected shoplifters and vandals, it only allows that detention "for a time sufficient to summon a police officer to the premises." Nothing in these statutes supports the plaintiff's reading of § 54-65c.