******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., concurring in the judgment. We have often explained that "[t]he rules of practice were promulgated to create a harmonious body of law, and we are required to read statutes [or rules] together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute [or rule] . . . we look not only at the provision at issue, but also to the broader statutory [or Practice Book] scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 561–62, 223 A.3d 368 (2020). With these principles in mind, I write separately to honor the context in which this court has consistently analyzed habeas actions and conclude that the Practice Book provisions governing motions to dismiss in civil actions dictate which procedures are required when a habeas court dismisses a petition for a writ of habeas corpus pursuant to Practice Book § 23-29.

I can discern no statutory interpretative analysis that would permit the result reached by the majority, whose opinion is devoid of any citation to chapter 11 of our rules of practice, the chapter that governs the relevant procedures applicable to civil actions, including habeas corpus actions. Rather than analyze the controlling Practice Book sections in chapter 11, the majority opinion relies on perceived textual differences between Practice Book §§ 23-24 and 23-29, a sweeping citation to § 23-34, and certain extratextual sources in an effort to support its conclusion. Relying on these sources, the majority concludes that, when a habeas court, on its own motion, seeks to dismiss a petition for a writ of habeas corpus pursuant to § 23-29, it is required to provide the petitioner only with notice of the motion and an opportunity to submit a written brief in opposition to the motion but not a hearing as of right. None of the sources relied on by the majority, however, requires notice and an opportunity to submit a written brief. Notably, the majority omits the true source of those requirements—chapter 11 of the rules of practice—in an effort to avoid acknowledging that a hearing is also required as of right. See, e.g., Practice Book § 11-1 (petitioner is entitled to notice of motion to dismiss); Practice Book § 11-10 (a) (petitioner is entitled to submit written brief in opposition to motion to dismiss); Practice Book § 11-18 (a) (petitioner is entitled to hearing on motion to dismiss). By carefully avoiding any citation to chapter 11, the majority endeavors to create its own set of rules, whereby a petitioner is not entitled to a hearing to argue the merits of a habeas court's motion to dismiss.

Tellingly, the majority does not offer a substantiated rationale for denying a petitioner his "as of right" oppor-

tunity to argue his grounds for not dismissing the petition when that effort is initiated by the habeas court. The most the majority can muster is its claim, unsupported by any evidence, that requiring oral argument before dismissing a habeas petition, in that limited subset of court initiated dismissal motions, would be "overly burdensome" on the habeas court and, therefore, "inefficient . . . ." That argument, however, could apply with equal, if not greater, force to every other habeas case, in which a motion to dismiss is filed by a respondent, rather than initiated by the habeas court. Indeed, it could also apply to every summary process action or foreclosure case in this state. Would the majority suggest that this court could bypass the exact same rule at issue in this case, which provides an "as of right" opportunity to argue a motion to dismiss, in those instances too, because it might make the job of the judge easier or more convenient? My reading of the majority's opinion suggests that this court could do exactly that, if it wanted, regardless of the rules that all of the judges of the Superior Court have adopted as a cohesive, legislative body.

Instead, I choose a different path that honors the choices made by the Superior Court judges. Reading the provisions of the rules of practice together, as we must, I conclude that a habeas court must provide parties with notice, an opportunity to submit a written opposition, and a hearing as of right before it dismisses a petition for a writ of habeas corpus pursuant to Practice Book § 23-29. Accordingly, I respectfully concur in the judgment but disassociate myself from the analytic path the majority has trod.

I agree with the majority's recitation of the relevant facts, procedural history, and standard of review. I also agree with the majority that, at the time that the habeas court dismissed the present habeas action filed by the petitioner, Judson Brown, the court did not have the benefit of our decision in *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 548. In *Gilchrist*, we clarified the proper application and scope of the two Practice Book provisions under which a habeas court may dispose of a habeas petition on the basis of pleading deficiencies, Practice Book §§ 23-24 and 23-29. Section 23-24 (a) provides that the habeas court may decline to issue the writ of habeas corpus if "it appears that: (1) the court lacks jurisdiction; (2) the petition is wholly frivolous on its face; or (3) the relief sought is not available." If the judicial authority declines to issue the writ, it is required to "notify the petitioner . . . ." Practice Book § 23-24 (b). Section 23-29 similarly allows the habeas court to dismiss the petition at any time, on its own motion or on the motion of the respondent, if the court determines that "(1) [it] lacks jurisdiction; (2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted; (3) the petition presents the same ground as a prior petition pre-

viously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition; (4) the claims asserted in the petition are moot or premature; [or] (5) any other legally sufficient ground for dismissal of the petition exists."

In *Gilchrist*, we concluded that Practice Book § 23-24 serves a specific "screening function"; *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 560; and allows a habeas court to review petitions "prior to the issuance of the writ of habeas corpus and before commencement of a habeas action." Id., 561. We emphasized that § 23-24 "is intended only to weed out obviously and unequivocally defective petitions," as "[b]oth statute and case law evince a strong presumption that a petitioner for a writ of habeas corpus is entitled to present evidence in support of his claims." (Internal quotation marks omitted.) Id., 560. "If the court declines to issue the writ [pursuant to § 23-24], no further action is necessary beyond notifying the petitioner because there is no service of process, *no civil action* and, accordingly, no need for the appointment of counsel." (Emphasis added.) Id., 561. If the court does issue the writ, however, "all further proceedings should continue in accordance with the procedures set forth in our rules of practice, including Practice Book § 23-29." Id., 563.

The distinction between a habeas court's decision to decline to issue a writ pursuant to Practice Book § 23-24 and its decision to dismiss the petition pursuant to Practice Book § 23-29 is critical. Once a habeas petition survives initial review—and, thus, makes it past the judicial authority's gatekeeping function—a *civil* action has commenced, and the petitioner is entitled to certain procedural rights and safeguards. See id., 556–57, 561, 563. It is beyond dispute that a habeas action is a civil action in our courts, and, therefore, these rights and safeguards include all of the procedures applicable to other civil actions unless, of course, they are supplemented or superseded by the more specific rules pertaining to habeas actions. See id., 555.

In the present case, the habeas court dismissed the petition pursuant to Practice Book § 23-29 (3) without, first, having considered whether it could decline to issue the writ under Practice Book § 23-24. See id., 562 ("[f]irst, upon receipt of a habeas petition . . . the judicial authority must review the petition to determine if it is patently defective because the court lacks jurisdiction, the petition is wholly frivolous on its face, or the relief sought is unavailable" (citations omitted)). I therefore agree with the majority that the judgment of the Appellate Court should be reversed and the case remanded to the habeas court so that it can determine whether grounds exist to decline to issue the writ pursuant to § 23-24. I agree with the majority that this is the most efficient approach for resolving cases pending before this court and the Appellate Court that were

decided prior to this court's decision in *Gilchrist*. See footnote 11 of the majority opinion.

In my view, however, the majority should have ended its analysis there, notwithstanding the pending cases it cites; see footnote 1 of the majority opinion; because that holding fully disposes of this appeal. Nevertheless, because the majority opinion continued on to analyze the petitioner's rights prior to dismissal of his petition pursuant to Practice Book § 23-29, I write separately to express my disagreement with this dictum and the majority's interpretation of the relevant Practice Book provisions.

Resolution of the issue of whether habeas courts are required to provide parties with notice and an opportunity to be heard before they dismiss a habeas petition pursuant to Practice Book § 23-29 requires this court to construe the rules of practice. Accordingly, our standard of review is plenary. See, e.g., *Disciplinary Counsel* v. *Elder*, 325 Conn. 378, 386, 159 A.3d 220 (2017). The familiar principles of statutory interpretation, which apply with equal force to this court's interpretation of our rules of practice, guide my analysis. See, e.g., *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 594, 181 A.3d 550 (2018). In construing statutes or Practice Book provisions, "[General Statutes] § 1-2z directs us first to consider the text of the statute [or rule] itself and *its relationship to other statutes [or rules]*. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute [or rule] shall not be considered." (Emphasis added; footnote omitted; internal quotation marks omitted.) *State* v. *Heredia*, 310 Conn. 742, 756, 81 A.3d 1163 (2013). It is axiomatic that, when interpreting a statute or Practice Book provision, "we are guided by the principle that the [promulgating authority] is always presumed to have created a harmonious and consistent body of law . . . . Construing statutes [or Practice Book provisions] by reference to others advances [the values of harmony and consistency within the law]. In fact, courts have been said to be under a duty to construe statutes [and Practice Book provisions] harmoniously [when] that can reasonably be done." (Internal quotation marks omitted.) *State* v. *Agron*, 323 Conn. 629, 638, 148 A.3d 1052 (2016); see also, e.g., *Wiseman* v. *Armstrong*, 295 Conn. 94, 102–104, 989 A.2d 1027 (2010) (looking to relevant Practice Book scheme to "ensure the coherency of [its] construction" and applying principle that promulgating authority is presumed to have intended to "[create] a harmonious and consistent body of law" to court's interpretation of relevant Practice Book provision (internal quotation marks omitted)).

In accordance with § 1-2z, I first turn to the relevant

language of Practice Book § 23-29 to determine whether the provision expressly answers the question of whether a habeas court is required to provide parties with notice and an opportunity to be heard before the court dismisses a habeas petition pursuant to that rule. Section 23-29 provides: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that: (1) the court lacks jurisdiction; (2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted; (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition; (4) the claims asserted in the petition are moot or premature; [or] (5) any other legally sufficient ground for dismissal of the petition exists." The majority correctly notes that § 23-29 is silent on the issue of whether prior notice or an opportunity to be heard is required before dismissal. Where I part ways with the majority is its conclusion that the provision's silence renders it ambiguous.

"It is well settled . . . that silence does not necessarily equate to ambiguity. . . . Rather, [i]n determining whether legislative silence renders a statute [or Practice Book provision] ambiguous, we read the statute [or Practice Book provision] *in context* to determine whether the language is susceptible to more than one reasonable interpretation." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Ramos*, 306 Conn. 125, 136, 49 A.3d 197 (2012); see also, e.g., *Mayfield* v. *Goshen Volunteer Fire Co.*, 301 Conn. 739, 745, 754–56, 22 A.3d 1251 (2011); *Hicks* v. *State*, 297 Conn. 798, 802, 1 A.3d 39 (2010); *State* v. *Orr*, 291 Conn. 642, 653–54, 969 A.2d 750 (2009); *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 133–34, 848 A.2d 451 (2004).[1]

The majority reasons that Practice Book § 23-34's reference to the fact that "[t]he judicial authority may establish . . . additional procedures" somehow allows this court to bypass its duty to consider Practice Book § 23-29 against the backdrop of the broader Practice Book scheme. See footnote 7 of the majority opinion and accompanying text. I disagree. Section 23-34 provides that "[t]he judicial authority may establish such additional procedures as it determines will aid in the fair and summary disposition of habeas corpus petitions, including, but not limited to, scheduling orders." A far cry from giving a habeas court the broad authority to create any additional procedural rule it deems appropriate in a given case, § 23-34 merely governs case management matters and is applicable only after a habeas petition has survived the judicial authority's review pursuant to Practice Book §§ 23-24 and 23-29, and a civil action has commenced.

In *Gilchrist*, we observed that "[t]he rules of practice governing habeas corpus proceedings . . . clearly evince an order of operations, providing for procedures and motions in the sequence in which they generally occur in a typical habeas case." (Citation omitted.) *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 562. It was this principle, coupled with the unique procedures applicable to habeas actions, that led us to conclude that Practice Book § 23-24 comes first in the procedural sequence. See id., 556–62. Under its authority pursuant to § 23-24, the judicial authority can decline to issue the writ if the petition is patently defective. See id., 562–63. If the writ is issued, however, the habeas court should then take the actions necessary to prepare the case to move forward, such as ruling "on any request for the appointment of counsel and any application for the waiver of filing fees and costs of service." Id., 563; see also Practice Book §§ 23-25 and 23-26. "After the writ has issued, all further proceedings should continue in accordance with the procedures set forth in our rules of practice, including Practice Book § 23-29." *Gilchrist* v. *Commissioner of Correction*, supra, 563. Once the petition survives review under § 23-29, and the civil action has commenced, our rules of practice provide guidance for filing a return and a reply to the return, amending a petition or pleading, and requesting a more specific statement. See Practice Book §§ 23-30 through 23-33. It would make little sense for the Rules Committee of the Superior Court to insert such procedures in between yet another avenue through which a habeas court could dismiss a habeas petition. Instead, in my view, § 23-34 introduces the subsequent sections, which deal specifically with the procedural aspects of the habeas action: the schedule for filing pleadings; Practice Book § 23-35; summary judgment; Practice Book § 23-37;[2] discovery; Practice Book § 23-38; depositions; Practice Book § 23-39; and court appearances. Practice Book § 23-40. In addition to the procedures to which habeas petitioners are explicitly entitled, "[t]he judicial authority may establish such *additional* procedures" as it deems necessary to move the case forward and, thus, reach a "fair and summary disposition . . . ." (Emphasis added.) Practice Book § 23-34; see also, e.g., *Kelsey* v. *Commissioner of Correction*, 329 Conn. 711, 725, 189 A.3d 578 (2018) (citing § 23-34 in support of observation that "the rules of practice expressly recognize the habeas court's discretion over *scheduling*" (emphasis added)).

My reading of Practice Book § 23-34 also garners support from a similar provision in chapter 23, the "Miscellaneous Remedies and Procedures" chapter of our rules of practice. Section 23-34 substantively mirrors Practice Book § 23-14, which provides: "The judge to whom complex litigation cases have been assigned may stay any or all further proceedings in the cases, may transfer any or all further proceedings in the cases to

the judicial district where the judge is sitting, may hear all pretrial motions, and *may enter any appropriate order which facilitates the management of the complex litigation cases*." (Emphasis added.) Like § 23-34, I read § 23-14 to give complex litigation judges authority over matters of docket management. See, e.g., W. Horton et al., 1 Connecticut Practice Series: Superior Court Civil Rules (2020–2021 Ed.) § 23-14, authors' comments, p. 951 ("[Practice Book § 23-14] generally confers wide trial and docket management discretion on complex litigation judges—an appropriate thing . . . given the nature and purpose of the [C]omplex [L]itigation [D]ocket"). In my view, it would be untenable to construe § 23-14 to give complex litigation judges the power to dismiss a case without providing parties with a hearing as of right, particularly in such high stakes matters, when an ordinary slip and fall, negligence action would be the subject of a mandatory oral argument pursuant to Practice Book § 11-18 (a) before it could be dismissed. So, too, would it be contrary to principled tenets of civil procedure for a habeas court to dismiss a petition pursuant to Practice Book § 23-29 without affording the petitioner a hearing as of right.

More fundamentally, I am troubled by the analysis through which the majority arrives at its conclusion that a petitioner is entitled only to notice and an opportunity to be heard on the papers, but not oral argument as of right, prior to dismissal of the petition. As I explain hereinafter, the majority fails to analyze the issue in this case through the lens with which we have traditionally analyzed habeas actions, which are civil actions. See, e.g., *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 555. Although the majority acknowledges that habeas actions are civil proceedings, it nevertheless concludes that "the Rules Committee did not intend for the general provisions governing civil cases to resolve the question before us." I disagree. Well settled dictates of statutory construction require that we read provisions of our rules of practice together; because the procedures applicable to habeas actions do not answer the specific question before us, the only logical next step—in my view—would be to look to the general Practice Book scheme.

Nevertheless, following its conclusion that Practice Book § 23-29 is ambiguous, the majority seeks to divine the Rules Committee's intent in drafting that provision. The majority begins by looking to an earlier version of the provision, namely, Practice Book (1995) § 531 (repealed October 1, 1995), which provided for the dismissal of a habeas petition "without hearing" only if "a previous application brought on the same grounds was denied . . . unless [the application] states new facts or proffers new evidence not reasonably available at the previous hearing." The majority correctly notes that, when our rules of practice were amended, and Practice Book §§ 23-24 and 23-29 were adopted, the "without

hearing" language in Practice Book (1978–97) § 531 was abandoned. See *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 355–56, 358–59, 199 A.3d 1127 (2018) (*Bishop, J.*, concurring), rev'd on other grounds, 345 Conn.    ,    A.3d    (2022). The majority concludes that the omission of this language in § 23-29 indicates that "the Rules Committee intended to require something more under [that section] . . . ." That "something more," in the majority's view, is not a full hearing but, instead, a right to be heard on the papers by filing "a brief or a written response . . . ." I disagree.

In my view, the majority simply cannot reach the conclusion that notice and a hearing are required prior to dismissal without acknowledging chapter 11 of the rules of practice. The only purported "authority" cited by the majority, supporting its notion that only notice and a hearing on the papers are required before dismissal, is the "textual difference between [Practice Book §§ 23-24 and 23-29] . . . ." I am unpersuaded that this textual difference "requires" much of anything. In my view, the true source of authority for these entitlements is chapter 11. See, e.g., Practice Book § 11-1 (petitioner is entitled to notice of motion to dismiss); Practice Book § 11-10 (a) (petitioner is entitled to submit written brief in opposition to motion to dismiss).

Moreover, I would conclude that the Rules Committee's deletion of the language "without hearing" contained in Practice Book (1995) § 531 implies that the Rules Committee intended for habeas courts to hold a hearing on a habeas petition prior to its summary dismissal pursuant to Practice Book § 23-29. Indeed, had the Rules Committee intended for petitions to be dismissed on the bases enumerated in § 23-29 without a hearing, it would have continued to include the "without hearing" language in that provision, as it had previously included in Practice Book (1995) § 531. See, e.g., *Gilmore* v. *Pawn King, Inc.*, 313 Conn. 535, 546–48, 98 A.3d 808 (2014) (concluding that legislature's removal of certain language from prior version of statute indicated that legislature intended to effectuate change in subsequent version of statute). My interpretation, tellingly, also aligns with the mandate of chapter 11, which provides that "oral argument shall be a matter of right" on motions to dismiss. Practice Book § 11-18 (a).

The majority also draws on the legislature's 2012 habeas reform as support for its conclusion that, although the rules of practice require that a petitioner receive notice of the habeas court's intention to dismiss a petition and an opportunity to file a written response, "[i]t does not . . . necessarily follow from this premise that a habeas court's dismissal on its own motion pursuant to Practice Book § 23-29 requires a full hearing . . . ." Specifically, the majority appears to conclude that, given the amendments' intended purpose of " 'averting frivolous habeas petitions and appeals,' " the

Rules Committee could not have intended to impose a hearing requirement when it adopted § 23-29, as this additional procedure would "[overburden] an already strained habeas docket . . . ." Although I agree that the *legislature's* 2012 reform measures were intended to create a mechanism for screening frivolous habeas claims and addressing the influx of habeas petitions, I disagree that this intent necessarily supports the majority's conclusion that the *Rules Committee* intended that habeas petitioners only be allowed the opportunity to submit a written brief—and not be afforded a hearing as of right—prior to a habeas court's dismissal of a petition under § 23-29. See, e.g., *Adams* v. *Rubinow*, 157 Conn. 150, 156, 251 A.2d 49 (1968) (explaining that, under separation of powers principles, "the General Assembly has no power to make rules of administration, practice or procedure [that] are binding on [our appellate courts or the Superior Court]"); *Heiberger* v. *Clark*, 148 Conn. 177, 185, 169 A.2d 652 (1961) ("[i]rrespective of legislation, the rule-making power is in the courts"); see also, e.g., *State* v. *McCahill*, 261 Conn. 492, 520B, 811 A.2d 667 (2002) (explaining that, under separation of powers doctrine, "the General Assembly lacks the power to enact rules governing procedure" (internal quotation marks omitted)).

To the extent the legislature's intent is relevant in this regard, we have made clear that, "notwithstanding the comprehensive nature of the 2012 habeas reform, through which five entirely new subsections were added to [General Statutes § 52-470], the legislature left intact the final clause of § 52-470 (a), which provides that the habeas court 'shall . . . dispose of the case as law and justice require.' Thus, the legislature retained language that makes clear that *the expeditious resolution of habeas petitions must be accomplished in a manner that does not curtail a petitioner's right to due process. In other words, the two principles of expediency and due process must be balanced in effectuating the legislative intent of the 2012 habeas reform."* (Emphasis added.) *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 716–17. The petitioner's right to due process, in my view, includes the right to notice, to submit a written opposition, and an opportunity to be heard as of right, consistent with the rules of practice applicable to civil actions generally.[3]

I recognize the majority's concern that there may be instances in which the habeas court does not have the necessary information at the time of initial review to make a determination pursuant to Practice Book § 23-24. See footnote 8 of the majority opinion. However, it is not this court's role to erect a backstop in Practice Book § 23-29 and to inject exceptions into the general civil rules—in the form of an opportunity to be heard only on the papers—thereby circumventing petitioners' rights to a hearing. See, e.g., *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 215–16, 901

A.2d 673 (2006) ("[w]e must construe a statute [or Practice Book provision] as written . . . [and we] cannot rewrite a statute [or Practice Book provision] to accomplish a particular result" (internal quotation marks omitted)). Significantly, "this court has recognized on numerous occasions that [it] lacks authority to make changes to the rules of practice"; *State* v. *DeJesus*, 288 Conn. 418, 508, 953 A.2d 45 (2008) (*Katz, J.*, dissenting); as "the judges of the Superior Court are [the ones] empowered to adopt and promulgate rules regulating pleading, practice and procedure in judicial proceedings," and those rules "have the force of law." (Internal quotation marks omitted.) Id., 507 (*Katz, J.*, dissenting). With respect to the rules of practice, this court is not free to supplant its own policy preferences for those of the judges of the Superior Court. See, e.g., id., 507–508 (*Katz, J.*, dissenting); see also, e.g., *State* v. *Johnson*, 228 Conn. 59, 61–62, 634 A.2d 293 (1993) ("[a]lthough a clarifying amendment [to] the rules of practice to address the problem illuminated by this case might well be desirable, this court does not sit as the Rules Committee"); *State* v. *Jennings*, 216 Conn. 647, 665 n.11, 583 A.2d 915 (1990) ("We do not sit to decide the utility or need for written instructions in the Connecticut courts. To the extent that the defendant seeks such a decision, his request is more properly directed to the Rules Committee . . . ."). Put simply, "[i]f the legislature [or the Rules Committee] desires a different result, it is a legislative function to rewrite the statute [or Practice Book provision] to achieve that result." *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, supra, 216.

In contrast to the majority's interpretation, I would look to the existing Practice Book provisions that pertain to all civil actions and provide an orderly and predictable answer to the question before us. Rather than rely on extratextual sources and perceived developments in the habeas rules to formulate an "interpretation" of the required procedures—and invite the Rules Committee, post hoc, to amend the text of the relevant rules as it deems appropriate—the majority should have applied the principled tenets of statutory construction, which dictate the procedures to which a habeas petitioner is entitled before a habeas court, on its own motion, dismisses a petition.

I begin my own analysis with the well established principle that "[h]abeas corpus is a civil proceeding." *Collins* v. *York*, 159 Conn. 150, 153, 267 A.2d 668 (1970). Consequently, "[a] habeas corpus action, as a variant of civil actions, is subject to the ordinary rules of civil procedure, unless superseded by the more specific rules pertaining to habeas actions." (Internal quotation marks omitted.) *Kendall* v. *Commissioner of Correction*, 162 Conn. App. 23, 45, 130 A.3d 268 (2015). Because the rules pertaining to habeas actions do not provide a more specific rule, I look to the broader Practice Book provisions governing civil actions, generally, in order

to determine whether a petitioner is entitled to notice and a hearing prior to dismissal of a habeas petition.[4] See, e.g., *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 555; *Nelson* v. *Commissioner of Correction*, 326 Conn. 772, 782, 167 A.3d 952 (2017); see also, e.g., *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 360–61 n.9 (*Bishop, J.*, concurring) (citing cases in which our Appellate Court applied provisions of general civil rules of practice to habeas actions).

Relevant to this case, chapter 10 of the Practice Book —titled "Pleadings"—and chapter 11—titled "Motions, Requests, Orders of Notice, and Short Calendar"—provide, among other things, the procedures applicable to motions to dismiss generally. Accordingly, in the absence of a more specific rule in the habeas section of our rules of practice, chapters 10 and 11 govern the procedural requirements a habeas court must satisfy before it dismisses a petitioner's habeas petition. Practice Book § 11-1 (a) provides in relevant part that "[e]very motion . . . directed to pleading or procedure . . . shall be in writing. . . ."[5] As we have explained, "[t]he requirement that parties file their motions in writing is to ensure that the opposing party has written notice of the motion to dismiss." *Herrmann* v. *Summer Plaza Corp.*, 201 Conn. 263, 273, 513 A.2d 1211 (1986); see also Practice Book § 10-31 (requiring that nonmovant have opportunity to respond to motion to dismiss, providing for both legal argument and factual supplementation of record in response).[6] "[R]eceipt of adequate notice is essential in order for the nonmoving party to exercise [his] right under the [rules of practice] to be heard." *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 361 (*Bishop, J.*, concurring). As Judge Bishop recently noted in his concurrence in *Boria*, the rules of practice provide nonmoving parties to a motion to dismiss with two explicit opportunities to be heard. Id. First, Practice Book § 11-10 (a) provides an adverse party to a motion to dismiss the opportunity to submit a written opposition to the motion.[7] Second, pursuant to Practice Book § 11-18 (a), "as to motions to dismiss [and certain other motions] . . . oral argument *shall be a matter of right* . . . ." (Emphasis added.) The application of these rules of practice to this case leads to the conclusion that, pursuant to chapters 10 and 11, a habeas petitioner is entitled to notice, an opportunity to file a written opposition, and an opportunity to be heard before a matter may be dismissed under Practice Book § 23-29.

The application of the foregoing rules is no doubt most straightforward when it is the respondent who moves to dismiss pursuant to Practice Book § 23-29. See, e.g., *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 362 (*Bishop, J.*, concurring) ("In such circumstances, it is clear that the respondent must file a written motion and a memorandum of law and serve the same on the petitioner . . . . The effect of the ser-

vice of the motion and brief is to provide the petitioner with the notice necessary for the petitioner to be able to . . . file a memorandum of law in opposition to the motion . . . and . . . claim the matter for oral argument . . . ."). Nevertheless, in my view, the aforementioned principles apply with equal force, albeit in a slightly different way, when the court moves to dismiss the petitioner's habeas petition on its own motion.[8] Most notably, the habeas court need not draft a formal motion to dismiss or file a memorandum of law in support of its own motion to dismiss. Practice Book § 10-30 (b) explicitly provides that "[a]ny *defendant*, wishing to contest the court's jurisdiction, shall do so by filing a motion to dismiss . . . ." (Emphasis added.) Similarly, Practice Book § 11-1 (a) explains that "[e]very motion, request, application or objection directed to pleading or procedure . . . shall be in writing," but Practice Book § 11-2 defines "motion" in relevant part as "any application *to* the court . . . ." (Emphasis added.) When the habeas court, on its own motion, moves to dismiss a habeas petition, the motion is brought *by* the court. Thus, these rules provide that the court need not file a formal motion to dismiss or file a memorandum of law when the court, on its own motion, moves to dismiss the petition.

Although the requirement of a written motion to dismiss or a memorandum of law in support of the motion is inapplicable when the habeas court moves to dismiss the petition on its own motion, habeas petitioners, nevertheless, are still entitled to notice, an opportunity to submit a written brief, and an opportunity to be heard prior to the court's dismissal of the petition. I agree with Judge Bishop that, in the absence of an express provision in Practice Book § 23-29 allowing the habeas court to act without providing notice to the petitioner and an opportunity to be heard on the court's motion, "it is unreasonable and contrary to the rules pertaining to civil matters generally for [an appellate] court to import such a provision into § 23-29." *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 363 (*Bishop, J.*, concurring). Indeed, even when the habeas court moves to dismiss the petition on its own motion, Practice Book §§ 11-10 (a) and 11-18 (a) provide the petitioner with an opportunity to be heard—both on the papers and through oral argument as of right. Furthermore, when the motion to dismiss is placed on the short calendar list; see Practice Book §§ 11-13 (a) and 11-18 (a); the petitioner is provided with notice of the proceeding. See Practice Book § 11-14 ("[n]otice of the assigned date and time of the motion shall be provided to attorneys and self-represented parties of record"); cf. *Griswold* v. *Camputaro*, 177 Conn. App. 779, 792, 173 A.3d 959 (2017) ("[t]hese rules [of practice] implement the fundamental principle of judicial administration [t]hat no matter shall be decided unless the parties have fair notice that it will be presented in sufficient

time to prepare themselves upon the issue" (internal quotation marks omitted)), aff'd, 331 Conn. 701, 207 A.3d 512 (2019).

My interpretation also serves to synergize Practice Book § 23-29 with Practice Book § 23-40 (a), which provides for the right of the petitioner to be present at "any evidentiary hearing and at any hearing or oral argument on a question of law which may be dispositive of the case . . . ." Although I acknowledge that this rule does not expressly require the habeas court to conduct a hearing prior to dismissal of a petition pursuant to § 23-29, I agree with Judge Bishop that the "provisions [of § 23-40] entitling a petitioner to be present at any dispositive hearing would be rendered illusionary if [the] petitioner had no right to a hearing at all." *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 360 (*Bishop, J.*, concurring). In my view, the clearer, most harmonious, interpretation of the interplay between §§ 23-29 and 23-40 would be to "conclude that the latter [rule] entitle[s] a habeas petitioner to notice and an opportunity to be heard before dismissal pursuant to § 23-29." Id., 360 n.8 (*Bishop, J.*, concurring).

For the foregoing reasons, I conclude that, in the absence of a more specific provision in the rules of practice pertaining to habeas corpus actions stating otherwise, the habeas court must apply all of the relevant general civil practice rules contained in chapters 10 and 11 when it considers dismissing a petition pursuant to Practice Book § 23-29. Application of those rules provides that petitioners are entitled to notice, an opportunity to submit a written opposition, and a hearing as of right prior to dismissal of their petition pursuant to § 23-29.

We have commented that "[b]oth statute and case law evince a strong presumption that a petitioner for a writ of habeas corpus is entitled to present evidence in support of his claims." *Mercer* v. *Commissioner of Correction*, 230 Conn. 88, 93, 644 A.2d 340 (1994). I would add that the rules of practice go further and require that habeas petitioners are entitled to present relevant information before a habeas court dismisses the petition pursuant to Practice Book § 23-29. Accordingly, I respectfully concur in the judgment.

[1] The majority opinion cites the Appellate Court's majority and concurring opinions in *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 199 A.3d 1127 (2018), rev'd, 345 Conn. , A.3d (2022), as support for its conclusion that Practice Book § 23-29 is open to "at least two plausible interpretations . . . ." I disagree that the interpretation of § 23-29 advanced by the Appellate Court's majority opinion is at all plausible. Indeed, even the majority in *Boria* conceded that "the analysis contained in Judge Bishop's concurrence has some appeal" but thought it "prudent not to weigh in further with respect to [the] issue" until *Gilchrist* was decided. *Boria* v. *Commissioner of Correction*, supra, 341 n.9. The Appellate Court's reasoning, in my view, suffered from the same analytical misstep present in the majority's analysis here; the Appellate Court did not read § 23-29 in harmony with the entire Practice Book scheme, as was its duty. See, e.g., *State* v. *Agron*, supra, 323 Conn. 638.

[2] Like Practice Book § 23-29, Practice Book § 23-37, which governs sum-

mary judgment in habeas actions, does not, by its terms, provide for a hearing as of right. Under the majority's expansive reading of Practice Book § 23-34, a habeas judge could, theoretically, rule on a motion for summary judgment—or a motion to strike—without providing a petitioner with an opportunity to be heard. Surely, this would raise due process concerns. Cf. *State* v. *Anderson*, 319 Conn. 288, 311, 127 A.3d 100 (2015) ("[F]or more than [one] century the central meaning of procedural due process has been clear: *Parties whose rights are to be affected are entitled to be heard . . . .*" (Emphasis added; internal quotation marks omitted.)).

[3] Indeed, insofar as the majority is concerned about expeditious review of frivolous habeas petitions, Practice Book § 23-24 acts as a gatekeeper, as it "conserve[s] judicial resources by eliminating obviously defective petitions . . . ." *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 560.

[4] The very structure of our rules of practice suggests that chapter 23 of the Practice Book is supplemental to, and works in conjunction with, the rules of practice governing civil actions generally. Chapter 23 is aptly titled "Miscellaneous Remedies and Procedures." It contains the specific provisions applicable to habeas actions; see Practice Book §§ 23-21 through 23-42; foreclosure of mortgages; see Practice Book §§ 23-16 through 23-19; mandamus actions; see Practice Book §§ 23-45 through 23-49; arbitration; see Practice Book §§ 23-60 through 23-66; and alternative dispute resolution. See Practice Book § 23-67. Chapter 23 is a subsection of the broad, general section, "Superior Court—Procedure in Civil Matters," which spans seventeen chapters detailing process in civil actions.

[5] Practice Book § 10-30 (b) also provides in relevant part that "[a]ny defendant, wishing to contest the court's jurisdiction, shall do so by filing a motion to dismiss . . . ."

[6] Specifically, Practice Book § 10-31 provides: "(a) Any adverse party shall have thirty days from the filing of the motion to dismiss to respond to the motion to dismiss by filing and serving in accordance with Sections 10-12 through 10-17 a memorandum of law in opposition and, where appropriate, supporting affidavits as to facts not apparent on the record.

"(b) Except in summary process matters, the motion shall be placed on the short calendar to be held not less than forty-five days following the filing of the motion, unless the judicial authority otherwise orders. If an evidentiary hearing is required, any party shall file a request for such hearing with the court."

I note that the Rules Committee's—and, by extension, the Superior Court judges'—explicit decision, in subsection (b) of Practice Book § 10-31, to exclude summary process matters from placement on the short calendar is significant. Had the Rules Committee also intended for motions to dismiss in habeas actions to be excluded from placement on the short calendar, "it could have done so expressly . . . ." *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 605, 996 A.2d 729 (2010).

[7] Practice Book § 11-10 (a) provides in relevant part: "A memorandum of law briefly outlining the claims of law and authority pertinent thereto shall be filed and served by the movant with the following motions and requests . . . (2) motions to dismiss except those filed pursuant to Section 14-3 . . . . Memoranda of law may be filed by other parties on or before the time the matter appears on the short calendar."

[8] I note that the majority opinion is silent as to whether the petitioner would be entitled only to notice and an opportunity to submit a written opposition, and no oral argument, when the respondent—instead of the habeas court—initiates the motion to dismiss. Practice Book § 23-29 makes no distinction between the two and provides that the habeas court may dismiss the petition, "at any time, upon its own motion or upon motion of the respondent . . . ." In my view, the majority opinion would have to be read to apply the same procedure regardless of who is the movant, which clearly is contrary to the ordinary course of civil procedure.